475 A.2d 744

**COMMONWEALTH of Pennsylvania**

v.

**Rosario TARASCHI, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1983.

Filed April 13, 1984.

John T. Salvucci, Media, for appellant.

Dennis C. McAndrews, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and HESTER, JJ.

CAVANAUGH, Judge:

In this case, the appellant, Rosario Taraschi, was tried without a jury before Kelly, J. He was convicted of corrupt organizations, conspiracy to commit corrupt organizations, obstructing the administration of the law, conspiracy to commit bribery and to obstruct the administration of the law.[1] His motions for new trial and in arrest of judgment were denied and he was sentenced to six months to twenty-three months imprisonment for corrupt organizations, the other offenses were deemed to have merged for purposes of sentencing. The appellant has appealed to this Court from the judgment of sentence.

The appellant raises several issues on appeal and the first is that the evidence was insufficient to sustain the

---

1. It is somewhat jarring to lawyers steeped in the common law to encounter the crime of "corrupt organizations." Lawyers are familiar with the crimes of robbery, theft, assault, murder and kindred offenses but are taken aback when confronted with the charge of "corrupt organizations." Nevertheless, the terminology of the law changes and in keeping with the times a statutory crime of fairly recent origin has appeared in our legal galaxy so that today one may be convicted of "corrupt organizations."

convictions. We must view the evidence in the light most favorable to the Commonwealth as verdict winner, and accept as true all evidence and reasonable inferences therefrom, upon which, if believed, the fact finder could properly have based its verdict. *Commonwealth v. Helm,* 485 Pa. 315, 402 A.2d 500 (1979). Applying this test, the following facts were established at trial. The appellant and one Frank Carmolingo leased a property in Clifton Heights, Pennsylvania, and in 1978 operated a business known as the Deli Social Club. A large number of automobiles were parked at the club in the early hours of the morning and sometimes they remained there until 6:00 a.m. Since the property was zoned commercial the presence of cars in the early morning hours attracted the attention of the police. Appellant sought to operate the premises as a social club and petitioned for a variance to the zoning ordinance. A hearing was held in June, 1978, and testimony established that the conduct of the club constituted a nuisance with excessive noise and parking problems. Frank Carmolingo testified for the petitioners and stated that the appellant was his partner. The appellant, Rosario Taraschi, did not testify although he was present at the hearing together with his brother, Pietro Taraschi, and Salvatore Soli. A special exception was granted by the zoning board. However, the club was not permitted to operate between the hours of 1:00 a.m. and 10:00 a.m. Nevertheless, the club continued to operate in violation of the restrictions and as a result several citations were issued by the police.

Officer Mathis of the Clifton Heights Police met Carmolingo at a bar on July 27, 1978 and Carmolingo asked why the police were having problems with the "boys on the corner" and stated that he wanted to get together with Mathis and Berry, another local police officer. Carmolingo also stated that there was enough in it for everybody and "everybody liked to live good."

The local police then contacted the FBI and were instructed by them to set a further meeting with Carmolingo. Officers Berry and Mathis arranged a meeting for August

2, 1978 between themselves, Carmolingo and appellant. However, the appellant did not attend the meeting but Salvatore Soli and Camolingo attended as well as Officers Berry and Mathis. They discussed the problems of parking, noise and rowdiness at the club. Carmolingo asked how they could "settle" the problem. Berry asked what he meant by "settle." At this point Carmolingo and Soli offered Mathis and Berry two hundred dollars per month and Soli gave two one hundred bills to Mathis.

The testimony also established that in 1978 one Christopher Bartzoka had been hired by the appellant as a card dealer for the Deli Social Club. Bartzoka took five percent of each pot and paid the money over to Soli, Carmolingo or the appellant.

On August 30, 1978, when Soli gave Mathis and Berry their monthly payment of two hundred dollars the police officers told Soli that they felt they should be getting more money. Soli said that he would discuss the matter with the appellant. On October 20, 1978, Mathis and Berry again met with Soli who gave them the monthly two hundred dollars. They asked Soli what the appellant had said about more money and he said the appellant knew nothing about it, and that only he and Carmolingo were involved. Nevertheless, on November 3, 1978, when the next payment was made, Soli, Carmolingo and the appellant all arrived in the same car. The appellant stayed in the car some fifteen to twenty feet away but had a clear view of the pay-off which took place between Soli and Carmolingo who made payment to Mathis.

The next meeting between Soli and the police officers occurred on January 9, 1979, and Soli advised them that new owners were going to take over and that they would be responsible for payments in the future. Soli promised Mathis and Berry that the new owners would give them more money. He also discussed with the police a rumor that Mathis and Berry might be working for the FBI and that appellant had some question as to the trustworthiness of Mathis and Berry. Soli told the officers that he assured

the appellant that the local police and the FBI would not be working together.

In February, 1979, Richard Stratton became interested in taking over the club and discussed this with appellant and his brother Pietro. Ultimately, Stratton agreed with the appellant to buy the club on a trial basis and the appellant advised Stratton that he would have to pay "the cops $200.00 a month for the zoning violation." If the operation proved reasonably profitable Stratton was to complete purchase of the club. After taking over the club on a trial basis Stratton continued to pay the $200.00 per month on an irregular basis and Mathis went to the appellant and his brother to complain. On April 4, 1979 Mathis obtained $200.00 from Pietro Taraschi. At that time Stratton was not present but he stated that he later reimbursed Pietro. Stratton missed more pay-off appointments, and in May, 1979, Mathis again went to complain to the Taraschis. Pietro Taraschi advised Mathis that Stratton had "pulled out" and owed them a large sum of money. He also told Mathis that they were looking for someone new to take over.

Subsequently the appellant offered money to Stratton, and asked him not to get anyone in trouble. Stratton said that he wasn't trying to get anyone in trouble and advised the appellant that he didn't want any money. However, appellant sent someone to Stratton with a package and Stratton was told that the package contained $2,000.00. Stratton refused to accept the package.

■ Appellant contends that there was insufficient evidence to sustain the conviction of the offense of corrupt organizations under the Pennsylvania Corrupt Organizations Act.[2] The Act of December 6, 1972, 18 Pa.C.S. § 911(b)(3) provides in pertinent part:

[2] The appellant contends that federal cases interpreting the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S. C.A. § 1961 *et seq.*, require a reversal in this case. However, cases interpreting a federal statute are not controlling in the matter before us. Moreover, a comparison of the Pennsylvania Corrupt Organiza-

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

The Act further defines "racketeering activity" in 18 Pa.C.S. § 911(h) as follows:

(h) **Definitions.**—As used in this section:

(1) **"Racketeering activity"** means:

(i) any act which is indictable under any of the following provisions of this title:

. . . . .

Chapter 47 (relating to bribery and corrupt influence)

. . . . .

(iii) any conspiracy to commit any of the offenses set forth in subparagraphs (i) and (ii) of this paragraph; or

■■■■ The Act defines a "pattern" of racketeering activities as "a course of conduct requiring two or more acts of

tions Act and RICO reveals dissimilarities in the acts although both are directed at curbing illegal racketeering activities. Among the federal cases on which the appellant relies is *United States v. Guiliano*, 644 F.2d 85 (2d Cir.1981) in which the jury was instructed that two crimes of bankruptcy fraud constituted the two predicate acts of racketeering essential to convict on the RICO count. The Court of Appeals held that its reversal of one of the convictions of bankruptcy fraud undermined the RICO conviction. In *United States v. Pray*, 452 F.Supp. 788 (M.D.Pa.1978), the district court stated at 801:

The Court does not believe that the Government can charge someone with a series of crimes which would constitute a pattern of racketeering activity but not with engaging in such activity or, conversely, only with engaging in racketeering activity without being able to convict with respect to the underlying crimes.

Appellant also relies on *United States v. Brown*, 583 F.2d 659 (3rd Cir.1978), which reversed a conviction under RICO as the conviction of two of the four underlying crimes was reversed. In contrast to the above cases there is a recent decision of the United States Court of Appeals for the Third Circuit which upheld a conviction for violations of RICO where the defendant was not charged with the underlying or predicate act. In *United States v. Davis*, 576 F.2d 1065 (3rd Cir.1978), the defendant was charged and convicted of a violation of the Racketeer Influenced and Corrupt Organization Act (RICO). The predicate acts forming the basis of the racketeering activity were bribery or extortion and the defendant was not charged with either of these offenses. The Court of Appeals affirmed the conviction.

racketeering activity ..." 18 P.S. § 911(h)(4). Appellant argues that the evidence was insufficient because the underlying racketeering activity in this case was bribery and that he was not charged with or convicted of bribery. The Act, however, has no requirement that a defendant be convicted of the predicate crimes constituting the pattern of racketeering. Further, the Act provides at 18 Pa.C.S. § 911(h)(1)(iii) that racketeering activity means "any conspiracy to commit any of the offenses set forth in subparagraphs (i) and (ii)..." The appellant contends that "the defendant was neither charged nor convicted of even one substantive offense of bribery." He overlooks the fact that he was charged and convicted with conspiracy to commit bribery, and under the Act racketeering activities include a conspiracy to commit bribery.

█ In addition, the appellant's contention that he must be charged and convicted with the underlying offense is not supported by Pennsylvania law. Although there are no cases in Pennsylvania dealing directly on this point with respect to corrupt organizations, in an analogous situation Pennsylvania law has not been construed to require that a defendant be charged and convicted of an underlying substantive offense. In *Commonwealth v. Wilkinson*, 278 Pa.Super. 490, 420 A.2d 647 (1980), this contention of appellant was specifically answered. The defendant was charged with driving under the influence and homicide by vehicle. The district attorney dismissed the charge of driving under the influence. This Court held that the lower court erroneously quashed the transcript. We stated at 278 Pa.Super. 495, 496, 420 A.2d 650:

> As an initial matter, we must reject the lower court's conclusion that a charge of homicide by vehicle may be prosecuted only if a second, supporting, charge is brought charging the defendant with another motor vehicle code violation. A person is guilty of homicide by vehicle if she unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance ap-

plying to the operation or use of a vehicle or to the regulation of traffic ... when the violation is the cause of death. 75 C.P.S.A. § 3732 (1977).

In order to secure a conviction under this statute, the Commonwealth must prove beyond a reasonable doubt that the defendant *"engaged in* the violation of any law ... or ... ordinance applying to the operation or use of a vehicle or to the regulation of traffic ...." *Nothing in the statute indicates a legislative intent that in order to establish this element of the offense, the Commonwealth must bring a separate charge for such violation.* (Emphasis added).

The court further stated at 278 Pa.Super. 496, 420 A.2d 650:

As long as the Commonwealth gives the defendant adequate notice of the particular vehicle or traffic law or ordinance allegedly violated in causing the death,[3] whether or not the Commonwealth brings a separate charge for such violation is immaterial.

■ In the instant case the appellant was given adequate notice of the acts which constituted the pattern of racketeering in the information. The grand jury presentment was incorporated by reference in the criminal complaint affidavit and set forth with specificity the basis for the charges against the appellant. In addition, indictments and informations are sufficient where the crimes charged are substantially in the language of the statute. 19 P.S. § 261; Pa.R. Crim.P. 213, 225.

■ There was sufficient evidence to sustain the conviction of conspiracy to commit bribery and to obstruct the administration of law. Appellant's co-conspirators were Soli, Stratton, Carmolingo and Pietro Taraschi. The heart of the offense of conspiracy is an agreement to do an unlawful act. *Commonwealth v. Anderson,* 265 Pa.Super. 494, 402 A.2d 546 (1979). The agreement required for conspiracy can seldom be directly proved, nor need it be. *Commonwealth v. Stephens,* 231 Pa.Super. 481, 331 A.2d

719 (1974). A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the confederacy which demonstrates a unity of purpose to accomplish an unlawful act. *Commonwealth v. Weaver,* 309 Pa.Super. 509, 455 A.2d 1199 (1982).

The offense of obstructing the administration of law is set forth at 18 Pa.C.S. § 5101.[3] Without again summarizing the evidence, we are convinced that it was sufficient to sustain the convictions for conspiracy to commit bribery and to obstruct the administration of law as well as conspiracy to commit corrupt organizations. Appellant was an integral part of the scheme to bribe local police officers to permit illegal gambling and zoning violations in a business in which he had an interest. He participated in the hiring of the card dealer and shared in the distribution of money illegally obtained in operating the poker games. The direct and circumstantial evidence was sufficient to show that he conspired to bribe the police officers to overlook the various and continuous zoning violations.

With respect to the charge of obstruction of the administration of law, the appellant contends that there was no money paid to the police officers in return for "a violation of a known legal duty" as required by 18 Pa.C.S.A. § 4701.[4] This contention is patently without merit. The

---

3. The offense of obstructing administration of law or other government functions is defined at 18 Pa.C.S.A. § 5101 as follows:

**§ 5101. Obstructing administration of law or other governmental function**

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

1972, Dec. 6, P.L. 1482, No. 334, § 1, eff. June 6, 1973.

4. Bribery in official and political matters is defined at 18 Pa.C.S. § 4701 as follows:

evidence established a continuing pattern of payments to the police of substantial sums of money so that they would not enforce the laws which they were sworn to uphold.

 The appellant's contention that the two year statute of limitations was not complied with as to the offense of obstruction of the administration of law is also without merit. The offense allegedly was committed on April 4, 1979. On April 1, 1981, a criminal complaint was filed which charged the appellant with corrupt organizations and conspiracy. On May 18, 1981, the Commonwealth was granted permission to add the offense of obstructing the administration of law. We agree with the Commonwealth's contention that the prosecution for the offense of the obstruction of the administration of law began on April 1, 1981, although the criminal complaint filed on that day specifically named only the crimes of corrupt organizations and conspiracy. The affidavit attached to the complaint was eleven pages long and set forth in great detail the alleged acts constituting the obstruction of the administration of law. In fact, the affidavit is almost a summary of the testimony given at trial. "[W]hile a complaint used to institute a criminal proceeding must state the offense committed by the accused, and the general nature and time and place of the offense, it need not set forth the charges with the particularity of an indictment." *Commonwealth v.*

### § 4701. Bribery in official and political matters

(a) **Offenses defined.**—A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

(1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

(b) **Defenses prohibited.**—It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, had left office, or lacked jurisdiction, or for any other reason.

1972, Dec. 6, P.L. 1482, No. 334, § 1, eff. June 6, 1973.

*Wilkinson,* 278 Pa.Super. 490, 497, 420 A.2d 647, 651 (1980). The only question to be considered in determining the sufficiency of the complaint is whether the accused was sufficiently informed that he might be put on trial for the crime charged in the indictment. *Commonwealth v. Grego,* 116 Pa.Super. 295, 176 A. 550 (1935). Pa.R.Crim.P. 132 sets forth the requirement for the contents of the complaint and provides in Rule 132(6)(a):

(6)(a) In a court case, a summary of the facts sufficient to advise the defendant of the nature of the offense charged, but *neither the evidence nor the statute allegedly violated need be cited in the complaint,* nor shall a citation of the statute allegedly violated, by itself, be a sufficient compliance with this subsection; (Emphasis added).

The complaint contained a sufficient summary of the facts to alert the appellant that he might be tried for obstruction of the administration of law and the prosecution commenced on April 1, 1981, when the complaint was issued.[5]

■■■ The appellant next contends that the complaint filed on April 1, 1981, and the arrest warrant were issued without probable cause. The sole basis for this argument is that the complaint was based on a presentment issued by a grand jury that was illegally impaneled on February 4, 1981. The grand jury was convened by the President Judge of Delaware County pursuant to the provision of the Act of November 22, 1978, P.L. 1148, 19 P.S. § 265 *et seq.,* as amended. The Act erroneously referred to by the court in convening the grand jury had been repealed and reenacted

---

5. The Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S. § 5552 deals with the commencement of prosecution in criminal cases and provides:

(e) **Commencement of prosecution.**—Except as otherwise provided by general rule adopted pursuant to section 5503 (relating to commencement of matters), a prosecution is commenced either when an indictment is found or an information under section 8931(b) (relating to indictment and information) is issued, or when a warrant, summons or citation is issued, if such warrant, summons or citation is executed without unreasonable delay.

into the Pennsylvania Statutes by the Act of October 5, 1980, P.L. 693, No. 142, § 216, 42 P.S. § 20010, *et seq.*, the "JARA Continuation Act of 1980." The effect of this Act was to transfer 19 P.S. §§ 265–276 to 42 Pa.C.S. § 4541–4553. The Act of October 5, 1980, stated that it took effect in sixty days. Therefore, on December 4, 1980, 19 P.S. §§ 265–276 became effective at 42 Pa.C.S. §§ 4541–4543. On February 4, 1981, an incorrect citation was used by the court below in convening the grand jury. Merely using an outdated citation did not mean that the grand jury was improperly convened and that its actions were without any legal effect. *See* 1 Pa.C.S. § 1962 which provides:

### § 1962. Repeal and reenactment

Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced.

1972, Dec. 6, P.L. 1339, No. 290, § 3, imd. effective.

██ Appellant also contends that Pa.R.Crim.P. 1100 was violated as the Rule 1100 time clock should have commenced running on February 24, 1980 when an original complaint was filed rather than on April 1, 1981, when a second complaint was filed. All charges in the original complaint were dismissed at a preliminary hearing on April 11, 1980, due to the Commonwealth's failure to establish a *prima facie* case. Trial was commenced within one hundred and eighty days of the filing of the second complaint. Appellant's contention is without merit as the Rule 1100 period runs from the filing of the second complaint, where all charges against the defendant in the first complaint are dismissed at the preliminary hearing. *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981). There was in this case no attempt to evade Rule 1100 by having the original complaint dismissed. *See Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979); *Commonwealth v. Leatherbury*, 499 Pa. 450, 453 A.2d 957 (1982).

Appellant further contends that the court below erred in denying the motion to suppress evidence resulting from allegedly unlawful wiretaps and recorded conversations. A full suppression hearing was held after trial, which was without a jury, and the motion was dismissed by the court below.

Appellant argues that the wiretaps and conversations recorded prior to December 4, 1978, were in violation of statutory law in effect prior to December 4, 1972 which prohibited surreptitious listening to, or recording of conversations without approval of the person speaking. The earlier statute was replaced by the "Wiretapping and Electronic Surveillance Control Act," 18 Pa.C.S. § 5701 et seq. The suppression hearing delved into the question of whether the pre-December 4, 1978, tapes were used at the trial for any purpose and the court properly determined that they were not. The pre-December 4, 1978, tapes themselves were not introduced at trial and the failure to suppress them subsequent to trial, if error at all, was harmless beyond a reasonable doubt.

Appellant also contends that post-December 4, 1978, interceptions and recordings of oral communications should have been suppressed as "the Commonwealth failed to establish authorization through the proper channels for the use of tapes at the county level." Appellant overlooks the fact that the investigation in this case was not simply a state investigation, but was at least a joint investigation with the federal authorities. At the suppression hearing, two federal agents testified as to their participation in the investigation, particularly with respect to the recording devices uses by Officers Berry and Mathis. The police officers consented to interceptions of the communications, which interceptions were valid under federal law. 18 U.S.C. § 2511 provides:

> (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the

communication or one of the parties to the communication has given prior consent to such interception.

The wiretaps were performed under the auspices of the federal agents, and the police officers were acting under "color of law." The Pennsylvania "Wiretapping and Electronics Surveillance Control Act" provides at 18 Pa.C.S. § 5717(c):

> **(c) Otherwise authorized personnel.**—Any person who, by any means authorized by the laws of another state or the Federal Government, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence where otherwise admissible while giving testimony under oath or affirmation in any proceeding in any court of this Commonwealth.
>
> 1978, Oct. 4, P.L. 831, No. 164, § 2, effective in 60 days.

We believe that there was sufficient compliance with the law to admit the post-December 4, 1978 tapes.

Finally, appellant argues that even assuming "that the Commonwealth followed and complied with state procedural guidelines in securing authorization to record the conversations used at trial; nevertheless, this evidence should have been suppressed." The reason propounded by appellant to support this contention is that the accuracy of the tapes was not established by the Commonwealth. At the non-jury trial counsel for the appellant raised the same objections to the admissibility of the tapes. Agent Values, a special agent of the F.B.I. testified that he was involved in the investigation and also testified to his maintenance of the electronic recording equipment used. Counsel for the appellant stipulated to the agent's qualifications to use the equipment in question. The agent testified that he participated in making the recordings and that federal guidelines were followed. There was also testimony concerning the safeguarding of the tapes and the chain of custody. The court was satisfied that the recordings were authentic and

properly exercised its discretion in admitting them into evidence. Tape recordings are admissible when they are properly identified as a reproduction of what has been said and the voices are properly identified. *Commonwealth v. Starks,* 304 Pa.Super. 527, 450 A.2d 1363 (1982). We are satisfied that the court did not err in admitting the tapes.

Appellant next contends that there was a material and prejudicial variance between the allegation of the information and the proof at trial with respect to the charge of conspiracy. Basically, he contends that he was only charged with one conspiracy and that if any conspiracies existed at all there were two conspiracies. The first was the criminal conspiracy between Carmolingo, Soli, Pietro Taraschi and appellant when they originally operated the club and this operation ceased in November, 1978. Under the Commonwealth's evidence when Stratton took over after February, 1979, there was a new conspiracy, according to the appellant. We are not impressed with this argument as the evidence supported the conclusion of the court below that only one conspiracy existed. Under the Crimes Code, 18 Pa.C.S. § 903(g)(1), a conspiracy "terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired." There was no abandonment of the illegal activity of the appellant and his cohorts. Stratton took over the club on a trial basis only and the appellant's interest and participation, and that of his other co-conspirators, in the illegal activities continued after Stratton became involved. Even when Stratton pulled out of the deal, the appellant and his associates tried to sell the operation and continued their relationship with the police officers.

Appellant next contends that the court below erred in permitting the introduction of hearsay statements of alleged co-conspirators when there was insufficient independent evidence to establish a conspiracy. To support his contention, the appellant relies on *Commonwealth v. Weit-*

*kamp*, 255 Pa.Super. 305, 324, 386 A.2d 1014, 1024 (1978), which states:

> To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy did exist between the declarant and the person against whom the evidence is offered[9] and (2) that the statement sought to be admitted was made during the course of the conspiracy.

Appellant's contention that there was not sufficient independent evidence of the conspiracy between the declarants and the appellant is simply not supported by the record. The independent testimony of Mr. Stratton, Mr. Bartzoka and Officer Mathis was sufficient evidence of the conspiracy, and a proper foundation was laid for the admission of hearsay testimony.

 Finally, the appellant contends that he is entitled to a new trial because the court below erred in not compelling the Commonwealth to provide him with incident reports prepared by Officer Mathis. Prior to trial appellant filed a discovery motion. The Commonwealth turned over the evidence that it had which was requested prior to trial. However, at trial Officer Mathis testified that he had filed some incident reports prior to the zoning hearing which was held in June, 1978. The reports pertained to cars parked at the Deli Social Club and the times he saw people going in and out of the club.[6] This was the only time he had made an incident report. The prosecutor told the trial judge that he was unable to locate the incident reports and there was a

---

6. With respect to the incident reports Officer Mathis testified:

 The only things that were contained on these incident reports were a date, a code number and on the incident report itself all it said was that at such and such a time there were so many cars in front of the Deli Social Club. Okay? At such and such a time one person, two persons, three persons were seen leaving the Deli Social Club.

 The only reason these reports were made was on behalf of the Borough of Clifton Heights, to give them information for their zoning hearing stating that there were numerous cars there at different hours of the night and there were people coming and going at different hours of the night. That was the sole component of those incident reports.

possibility that they were fed into a computer. The officer testified that the information on the reports had been fed into the police computer and the reports themselves were destroyed. The assistant district attorney stated that the computer would be made available to defense counsel so that he could attempt to locate the incident reports but the offer was not accepted. The failure of the court below to require the Commonwealth to furnish information from the computer under the circumstances of this case, was not error. Even if we determine that it was error, a new trial will not be granted if the error is harmless. *Commonwealth v. Todt*, 318 Pa.Super. 55, 464 A.2d 1226 (1983). To be harmless the error must not have contributed to the verdict. *Commonwealth v. Hart*, 272 Pa.Super. 189, 414 A.2d 1071 (1979). We are convinced that if any error occurred, and we do not believe that it did, it was harmless.

Judgment of sentence affirmed.