555 A.2d 173

**COMMONWEALTH of Pennsylvania**

v.

**Clarence J. MEHALIC, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1988.

Filed March 1, 1989.

266

Leonard I. Sharon, Lewiston, Me., for appellant.

Daniel M. Myshin, Assistant District Attorney, Greensburg, for Com., appellee.

Before BROSKY, JOHNSON and MELINSON, JJ.

MELINSON, Judge:

This is an appeal from the Judgment of Sentence of the Court of Common Pleas of Westmoreland County in which Appellant, Clarence J. Mehalic, was sentenced to serve a term of imprisonment as a result of his conviction on the charges of criminal conspiracy, criminal solicitation, simple possession of a controlled substance (two counts), possession with intent to deliver a controlled substance (two counts), and delivery of a controlled substance (two counts). We affirm.

On 6 April 1985, Phillip Topper was arrested at his parents' home in Emmitsburg, Maryland on drug-related charges. After his arrest, Topper met with agents of the United States Drug Enforcement Agency (hereinafter "DEA"), the Maryland State Police, and the Emmitsburg Police Department. The Maryland authorities negotiated a plea agreement with Topper in which he agreed to cooperate in providing a substantial felony prosecution.

Topper informed the DEA and Maryland authorities that his source for cocaine was Mehalic. The DEA arranged for Topper to place two intercepted telephone calls to Mehalic in order to arrange a controlled drug buy. A controlled buy was scheduled by Topper to occur on 22 April 1988 at the Donegal Exchange of the Pennsylvania Turnpike in Westmoreland County. All previous drug transactions between Mehalic and Topper had occurred in Westmoreland County and Mehalic is a resident of the county. Pennsylvania State Police arrested Mehalic at the interchange and charged him with criminal conspiracy (six counts), possession of a controlled substance (two counts), possession with intent to deliver a controlled substance (two counts), delivery of a controlled substance (two counts), and criminal solicitation.

Mehalic filed a pre-trial motion requesting, *inter alia*, the suppression of the tape recorded telephone calls between Topper and Mehalic. After a hearing, the motion was denied by the Honorable Donetta W. Ambrose.

The Honorable Charles H. Loughran Jr. presided over a jury trial at which Mehalic was convicted of seven of the

thirteen drug related charges. Mehalic filed post-trial motions which were denied by Judge Loughran. On 26 January 1988, Mehalic was sentenced, as follows:

(a) two (2) to four (4) years of imprisonment and a Five Thousand Dollar ($5,000.00) fine for possession with intent to deliver a controlled substance, two (2) to four (4) years of imprisonment for criminal solicitation;

(b) two (2) to four (4) years of imprisonment for possession with intent to deliver a controlled substance to run concurrently with two (2) to four (4) years of imprisonment for delivery of a controlled substance and six (6) to twelve (12) months of imprisonment for possession of a controlled substance;

(c) two (2) to four (4) years of imprisonment for criminal conspiracy to run concurrently with (a) above.

Mehalic filed a motion for modification of the sentence. The motion was denied by Judge Loughran. This timely appeal follows.

On appeal, Mehalic presents four broad issues for our consideration, set forth in his brief as follows:

I. Whether Mehalic's conversations recorded by federal agents in violation of federal law should be excluded.

II. Whether a plea bargain wholly conditioned upon the return of a major felony prosecution violates due process.

III. Whether the lower court's rulings hindered counsel from accurately portraying the motives, character and bias of the key prosecution witness, Phillip Topper.

IV. Whether Mehalic's two to four year term of imprisonment is overly harsh as indicated by the undisputed evidence presented at sentencing.

Brief for Appellant at vi.

### I. Admissibility of Tape Recorded Telephone Conversations

■ Initially, Mehalic contends that the trial court erred in failing to suppress the tape recorded telephone conversations between Mehalic and Topper. The tape recordings were made pursuant to a federal wiretapping statute, 18

U.S.C. Section 2510 *et seq.* Although both the Commonwealth and Mehalic concede that the recording were conducted in accordance with the guidelines delineated in the federal statute, the recording did not comply with the procedures for a consensual tape recording set forth in Sections 5704(2)(i) and (2)(ii) of this Commonwealth's Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons.Stat.Ann. Sections 5701 *et seq.* (hereinafter "Wiretapping Act"). Mehalic argues that the federal recordings are inadmissible in a state prosecution because they do not comply with the requirements of the Commonwealth's more restrictive wiretapping statute.

Mehalic cites cases from other jurisdictions in support of his proposition.[1] However, we have previously addressed this issue in *Commonwealth v. Trignani,* 334 Pa.Super. 526, 483 A.2d 862 (1984) and *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 475 A.2d 744 (1984). In *Trignani,* the Bureau of Alcohol, Tobacco and Firearms of the United States Department of the Treasury was conducting an investigation into an arson. An electronic listening device was attached to a federal informant with his full knowledge and consent in order to gather evidence for the investigation. Numerous face to face conversations and telephone conversations between the informant and other persons were intercepted by federal authorities and a Pennsylvania State Trooper in the joint investigation. Trignani moved to suppress the admission of the recordings into evidence. The motion was denied and several conversations were played to the jury at trial. Post-trial motions challenging the admissibility of the recorded conversations were filed and denied.

A panel of this court considered the admissibility, in a Commonwealth prosecution, of the conversations intercepted pursuant to federal law. Appellant argued that the Commonwealth failed to get an order from this court ex-

---

1. Mehalic also cites *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) as general support for his position. *Schaeffer* has been effectively overruled by the Pennsylvania Supreme Court's decision in *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988).

pressly authorizing the interception of oral or wire communications, thereby knowingly circumventing the requirements of the Wiretapping Act by obtaining a wiretap pursuant to federal law. We noted that the Appellant did not present any evidence to convince us that the Commonwealth deliberately circumvented the dictates of the Commonwealth statute. Further, we held that Section 5717(c) of the Commonwealth's Wiretapping Act clearly expressed the intent of the legislature that "the contents of any wire or oral communication which is intercepted pursuant to federal authority may be admissible evidence in Pennsylvania courts." *Trignani*, 334 Pa.Super. at 531–532, 483 A.2d 862.[2]

"We must conclude that the use in this Commonwealth of taped conversations secured through a legally authorized federal wiretap is not in contravention of the Pennsylvania Anti-wiretap statute, and that any evidence disclosed by such means may be admissible in our courts. To reach any other result would severely hamper the detection and apprehension of members of organized crime syndicates and would impose severe restrictions on this Commonwealth's law enforcement personnel."

*Trignani*, 334 Pa.Super. at 534, 483 A.2d 862.

Here, the DEA intercepted communications pursuant to the federal wiretapping statute. There is no contention contained in Mehalic's brief either that the interception violated the federal statute or that the law enforcement officials of the Commonwealth knowingly attempted to circumvent the provisions of the Commonwealth's Wiretapping Act. In light of the holdings of this court in *Trignani*

2. **Section 5717. Disclosure or use of contents of wire or oral communications or derivative evidence**

(c) **Otherwise authorized personnel.**—Any person who, by any means authorized by the laws of another state or the Federal Government, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence where otherwise admissible while giving testimony under oath or affirmation in any proceeding in any court of this Commonwealth.
18 Pa.Cons.Stat.Ann. Section 5717(c).

and *Taraschi,*[3] and considering the plain language of Section 5717(c) of the Wiretapping Act, we find that the trial court did not err in admitting the recordings into evidence at trial.

## II. Plea Agreement Contingent Upon Substantial Prosecution

We now turn to a consideration of whether the trial court erred in permitting Topper to testify on behalf of the Commonwealth. Mehalic argues that it was a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution to permit Topper, who had entered into a plea agreement with Maryland law enforcement officials, to testify against Mehalic. The plea agreement provided, in pertinent part:

6. That if Phil's cooperation does not result in a substantial felony prosecution, this plea bargain will be cancelled, however, the State agrees that none of the information furnished by Phil pursuant to the plea bargain will be utilized in the prosecution against him. Additionally, the Defendant retains the right to contest the warrant and any other aspect of the prosecution by appropriate motion. If Phil is convicted, the State will advise the sentencing Judge of his cooperation.

Commonwealth's Trial Exhibit No. 2. Mehalic urges us to construe the language of this agreement to mean that Topper's plea bargain would have been cancelled unless Mehalic had been convicted; thus, his testimony was corrupt and not admissible at trial. The Commonwealth counterargues that Topper's plea agreement was unaffected by the success or failure of the prosecution of Mehalic. The trial court held that "Topper had already been sentenced [by the State of Maryland]. His plea agreement was not contingent upon the success of the defendant's prosecution." Trial Court Opinion at page 8.

**3.** In *Taraschi,* we cited 18 Pa.Cons.Stat.Ann. Section 5717(c) and held that the content of wiretaps, lawfully performed under the auspices of federal authority and pursuant to the federal wiretapping statute, are admissible as evidence in a prosecution in this Commonwealth.

At trial, Topper testified that: he entered a guilty plea to a charge of possession of cocaine on 8 January 1986 in Frederick, Maryland; on 18 February 1986, he was sentenced to serve two (2) years of probation, and a suspended prison sentence; on 13 August 1986, his sentence was modified to one year of probation. The record is unclear whether Topper was required to comply with the terms of his plea agreement as part of his sentence or modified sentence. However, this fact is not critical to our final disposition of the issue.

If Topper was not required, as part of his sentence, to comply with the terms of the plea agreement, then the State of Maryland was powerless to modify the sentence imposed upon Topper.[4] Hence, if Maryland authorities were incapable of successfully attaining a modification of Topper's sentence, then Topper's credibility at trial could not be undermined by any taint of an alleged compulsion to testify in favor of the Commonwealth. Additionally, assuming *arguendo* that Topper's sentence was open to revocation by Maryland authorities, we nevertheless find that the trial court did not err in permitting him to testify against Mehalic.

The appellate courts of this Commonwealth have permitted witnesses to testify on behalf of the prosecution under circumstances in which the witness's bias, motive, or self-interest may be a crucial factor in determining the weight to be afforded his or her testimony. In *Commonwealth v.*

4. **RULE 4–345. SENTENCING—REVISORY POWER OF COURT**

. . .

(b) **Modification or Reduction—Time for.**—The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. The court may modify or reduce or strike, but may not increase the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity ... Md.R.Crim.Proc. 4–345(b).

There is no Maryland case law on the issue of whether the state may prove fraud, mistake, or irregularity in the sentence of a defendant who does not comply with the terms of a plea agreement which is not incorporated into the sentence.

*Evans*, 511 Pa. 214, 512 A.2d 626 (1986), three persons allegedly committed numerous house burglaries and a murder. One of the persons (hereinafter "Crater") was arrested three days after the murder on charges unrelated to the murder and burglaries. While being transported to his arraignment on the unrelated charges, Crater implicated the two other persons in the murder. As a result of Crater's statements, his two cohorts in the burglaries and murder were arrested. The Commonwealth called Crater as a witness to testify against the two defendants. The defendants were not permitted to cross-examine Crater on whether he had been promised, in return for his testimony, leniency on the criminal charges pending against him in the same county. Relying largely upon the testimony of Crater, the jury convicted the defendants of second degree murder. This court affirmed the Judgment of Sentence.

The Pennsylvania Supreme Court reversed and remanded the matter for a new trial holding that "whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." *Evans*, 511 Pa. at 224, 512 A.2d 626. Further, the court stated,

> The jury may choose to believe the witness even after it learns of actual promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.... While we have always acknowledged the right of a party to impeach by showing bias, new in the present case is our willingness to acknowledge what we had previously thought was too speculative: that a prosecution witness may be biased because of the expectation of leniency in

some pending matter even when no promises have been made. Thus, we hold that the right guaranteed by Article I. Section 9 of the Pennsylvania Constitution to confront witnesses against a defendant must be permitted to challenge a witness's self-interest by questioning him about possible or actual favored treatment by the prosecuting authority in the case at bar, or in any other non-final matter involving the same prosecuting authority.

*Evans,* 511 Pa. at 225–226, 512 A.2d 626.

In *Commonwealth v. Gay,* 369 Pa.Super. 340, 535 A.2d 189 (1988), the defendant was convicted of numerous charges as a result of a non-fatal shooting during a group altercation at a carnival. The Commonwealth presented two witnesses, whom the defendant alleged were involved in the altercation, to testify that the defendant committed the shooting. The defense sought to cross-examine the two witnesses concerning their status as persons on juvenile probation. The defense theorized that the witnesses may have testified in favor of the Commonwealth to avoid a revocation of their probations as a result of the altercation. The trial court sustained the Commonwealth's objections to this line of questioning.

A panel of this court reversed the trial court and remanded the matter for a new trial. The *Gay* panel did not hold that the two witnesses were too corrupt to testify. Rather, the panel concluded that the testimony was admissible so long as the defense was given the opportunity to probe the potential motives and self-interests of the witnesses.

In *Commonwealth v. Cauto,* 369 Pa.Super. 381, 535 A.2d 602 (1987), the defendant was convicted of sexual offenses against three juvenile males. The defense desired to cross-examine two of the juvenile victims who testified on behalf of the prosecution to show their bias or self-interest in testifying in a manner favorable to the prosecution. One of the youths had criminal charges pending against him. The other youth was on probationary status as a juvenile delinquent.

In the instance of D.D., the potential for bias is evident from the fact that at the time of trial, he had charges pending against him in juvenile court. Similarly, the probationary status of R.H. as a juvenile delinquent, subject to the ongoing supervision of the juvenile court, presented an apparent potential for biased testimony. *Cauto*, 369 Pa.Super. at 388, 535 A.2d 602. Once again, this court, relying upon *Evans*, determined that it was proper for the two juveniles to testify for the prosecution, and that the defense was entitled to cross-examine the witnesses to show bias or self-interest.

■ After reviewing *Evans* and its progeny, it is evident the courts of this Commonwealth have permitted the testimony of witnesses who might have a self-interest in testifying favorably for the Commonwealth. In *Evans*, the Supreme Court held that it is a violation of the Confrontation Clause of the Pennsylvania Constitution to forbid a defendant from probing a prosecution witness's potential for bias or self-interest. Similarly, in the cases decided since *Evans*, the courts have uniformly followed the mandate of *Evans* and have allowed cross-examination of Commonwealth witnesses to seek out potential biases or self-interests. Although the issue in the instant matter is framed in terms of a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution, we perceive the reasoning of *Evans* and its progeny to be controlling. We construe the Pennsylvania line of cases to permit the potentially corrupt witnesses to testify for the prosecution while allowing the defense to unearth, through effective cross-examination, and to present to the jury any bias, motive, or self-interest.

Moreover, the federal courts have addressed Fifth Amendment challenges substantially similar to the case at bar, and have permitted witnesses such as Topper to testify on behalf of the prosecution. Mehalic cites two federal cases, *United States v. Waterman*, 732 F.2d 1527 (8th Cir., 1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), and *United States v. Moeckly*, 769 F.2d

453 (8th Cir., 1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 311 (1986), to strengthen his proposition that Topper's testimony is inadmissible. Neither of these cases convinces this court that there has been a violation of Mehalic's Fifth Amendment right to Due Process.

In *Waterman,* a witness for the prosecution, in a mail fraud case, entered into an agreement with the federal government.

"The substance of the agreement was that, if Gamst's [the prosecution witness's] cooperation in the form of truthful testimony led to further indictments, the government would (1) affirmatively recommend that Gamst's sentence be reduced by two years.... If, however, Gamst's testimony did not lead to the indictment of other individuals, then the government ... would not specifically recommend any reduction in his sentence...."

*Waterman,* 732 F.2d at 1530, *quoting United States v. Waterman,* CR 81-0-47 (D.Neb. August 17, 1983). Waterman challenged the constitutionality of permitting Gamst to testify on the ground that the testimony violated Waterman's rights guaranteed by the Due Process Clause of the Fifth Amendment. The Eighth Circuit Court of Appeals interpreted this agreement between Gamst and the government to mean that Gamst's sentence was contingent upon a successful prosecution. The circuit court noted, "This case involves not the undisclosed possibility of bias, but the disclosed encouragement and reward of bias." *Waterman,* 732 F.2d at 1532. Despite this strong language, this pure "contingency fee" agreement was upheld by an equally divided court. The testimony of the government witness was admissible at trial.

Interestingly, the second case cited by Mehalic, *Moeckly,* lends support to the Commonwealth's position. In *Moeckly,* the government's chief witness testified pursuant to a plea agreement conditioned upon sentencing recommendations. These recommendations were to be made to the court by the government in the witness's case, provided that the quality and quantity of the witness's testimony met government

standards. The defendants, relying on *Waterman*, argued that they were denied due process because the government's discretion to make sentencing recommendations and parole eligibility contingent on the "quality" of his testimony created a great risk of perjury. The Eighth Circuit adopted the finding of the district court that the "quality" of testimony referred to truthfulness and not to obtaining convictions. Therefore, the circuit court reasoned, the plea agreement was not contingent upon the success of the prosecution. Also, the circuit court refused to prohibit the testimony of another government witness in return for a lighter sentence.

Other federal cases also lend support to the position espoused by the Commonwealth. In *United States v. Betancourt*, 838 F.2d 168 (6th Cir., 1988), *cert. denied*, —— U.S. ——, 108 S.Ct. 1748, 100 L.Ed.2d 210, a government witness testified pursuant to a plea agreement which contained the provision that his own sentence was contingent upon honest testimony which resulted in indictments. The circuit court noted that the circumstances surrounding the plea agreement were brought out fully during *voir dire* and during the examination of the witness. In *United States v. Gomez*, 810 F.2d 947 (10th Cir., 1987), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2488, 96 L.Ed.2d 379, a government witness made an agreement with federal authorities under which he would reveal his knowledge of the defendant's activities in return for a guilty plea on only one of numerous charges lodged against the witness. The government agreed to support a motion for a reduction of the witness's sentence if the witness fully cooperated with the government and testified truthfully. The Tenth Circuit upheld the validity of this agreement and permitted the witness to testify.

In *United States v. Dailey*, 759 F.2d 192 (1st Cir., 1985), the First Circuit upheld a conviction where the plea agreement stated that the government would recommend a reduced sentence depending "upon the value to the government" of the testimony. Similarly, in *United States v. Tarantino*, 846 F.2d 1384 (D.C.Cir., 1988), a government

witness entered into a plea agreement which contained the provision that the government would advise the sentencing judge (in the witness's case) of "the full nature, extent, and value of the cooperation provided" by the witness. *Tarantino*, 846 F.2d at 1418. The circuit court rejected the defendants' protestations that the testimony was inadmissible because it represented the fruits of a prohibited contingent plea bargain. Instead, the circuit court likened this plea agreement to a typical plea agreement under which an accomplice agrees to testify against another defendant in return for a reduced sentence. Finally, the federal courts have held that an informer, whose pay was dependent on a government evaluation of the quality and quantity of the informer's testimony, was not prohibited from testifying. *United States v. Cervantes–Pacheco*, 826 F.2d 310 (5th Cir., 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988) ("It is up to the jury to evaluate the credibility of the compensated witness."); *see United States v. Cresta*, 825 F.2d 538 (1st Cir., 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *United States v. Persico*, 832 F.2d 705 (2nd Cir., 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988).

■ Here, the trial court clearly noted that Topper had already been sentenced in Maryland; thus, if this finding of the trial court is correct, Topper's sentence was not contingent upon favorable testimony or a successful prosecution because sentence had already been imposed. Further, if the plea agreement was incorporated into Topper's sentence, the plain language of Topper's plea agreement indicates that his testimony was not contingent upon the return of a successful prosecution, rather it was contingent upon a *substantial* prosecution.

While none of the above-discussed federal and Commonwealth cases involves an interpretation of a "substantial prosecution," we believe those cases are closely analogous to the case at bar and are persuasive in their reasoning. Mehalic has been unable to convince us, and we do not find, that a "substantial prosecution" connotes a "successful

prosecution." After a thorough review of the record and the briefs, we have discovered no evidence that Topper believed his plea agreement was contingent upon the return of a conviction of Mehalic. It was within the province of the jury to determine the appropriate weight to assign to Topper's testimony under these circumstances. Although this court is mindful of the dangers inherent in permitting a witness to testify pursuant to an agreement with the Commonwealth by which terms the witness may reap a benefit contingent on the substance of his testimony, in light of the federal and Commonwealth case law, we find that the admission of Topper's testimony does not violate Mehalic's rights to due process under the Fifth Amendment.

III. Admissibility of Prosecutorial Remarks

■ Mehalic asserts that certain remarks made by the prosecutor, allegedly vouching for Topper's credibility, were so egregious that they warranted the grant of a mistrial. The following remarks were made during the cross-examination of Topper:

**Mr. Sharon** (Mehalic's attorney): And again, is it your understanding that plea bargain, sir, that in order for you to not be prosecuted in Westmoreland County, to have a misdemeanor on your record....

**Miss Pickering** (Assistant District Attorney): Pardon me, I don't mean to interrupt. I can state unequivocally that the plea bargain had nothing to do with Westmoreland County, Pennsylvania, I don't think.

Notes of Testimony, 6–12 January 1987, page 305.

It is the law of this Commonwealth that the prosecutor is bound to limit statements to facts in evidence and those inferences which derive reasonably from the evidence at trial. *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987); *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985). A prosecutor may not express a personal opinion of a defendant's guilt or credibility. *Bricker*, 506 Pa. at 580, 487 A.2d 346 (citations omitted). The prosecutor may not argue facts outside the record "unless such facts are matters of common public knowledge based on ordinary

human experience or matters of which the court may take judicial notice." *Commonwealth v. Brooks*, 362 Pa.Super. 236, 238, 523 A.2d 1169, 1170 (1987), *quoting Commonwealth v. Danzy*, 234 Pa.Super. 633, 638, 340 A.2d 494, 497 (1975). Lastly, it is well settled that comments by the prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the members of the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Thomas*, 372 Pa.Super. 349, 362, 539 A.2d 829, 836 (1988) (citations omitted); *see Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984), *cert. denied*, 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984), *rehearing denied*, 472 U.S. 1033, 105 S.Ct. 3516, 87 L.Ed.2d 644 (1985).

Mehalic claims that the prosecutor's remarks, on evidence purportedly outside the record, vouched for the credibility of Topper; thereby, resulting in prosecutorial misconduct. We disagree. The matters referred to by the prosecutor were not outside the record. Topper had previously testified that he entered into the plea agreement with Maryland authorities, not Westmoreland County authorities. More importantly, Topper testified in response to what cooperation he was entitled to give under the terms of the plea agreement, as follows: "The cooperation was to give the name of my supplier and anybody else I might know that is supplying cocaine to people in the State of Maryland particularly, and in the State of West Virginia as well." Notes of Testimony, 6–12 January 1987, page 116.

Topper made no mention of an arrangement with the Commonwealth or Westmoreland County whereby he was compelled to provide testimony. Mehalic's argument that the prosecutor's remarks prevented Mehalic from presenting to the jury Topper's precise understanding of the terms of the agreement is spurious. The defense was not prohibited from eliciting the personal opinions of Topper on cross-examination. In the absence of any reference by Topper to

an agreement with Westmoreland County and considering the availability of effective cross-examination on this point, we conclude the prosecutor could assert, as a reasonable inference from Topper's testimony, that the plea agreement had nothing to do with Westmoreland County. Accordingly, the statement by the prosecutor did not rise to the level of misconduct.

## IV.  Denial of a Request for Continuance

Mehalic complains that the prosecution did not turn over to the defense some notes which were prepared at a meeting between Topper, the Maryland State Police, the Emmitsburg, Maryland Police, and the DEA. Mehalic requested a continuance to obtain the notes of the meeting. The granting or refusal of a request for a continuance is vested in the discretion of the trial court. *Commonwealth v. Brown*, 351 Pa.Super. 119, 124, 505 A.2d 295, 298 (1986); *Commonwealth v. Lore*, 338 Pa.Super. 42, 59, 487 A.2d 841, 850 (1984). The denial of a continuance will be reversed on appeal only upon a showing of palpable and manifest abuse of discretion. *Brown*, 351 Pa.Super. at 125, 505 A.2d 295. Further, we shall not reverse a denial of a motion for continuance in the absence of prejudice. *Brown*, 351 Pa.Super. at 126, 505 A.2d 295. We must evaluate the merits of Mehalic's claim, that discovery was available to the Commonwealth and withheld from the defense, to determine whether the trial court abused its discretion in failing to grant the continuance.

Under Rule 305 of the Pennsylvania Rules of Criminal Procedure the Commonwealth must disclose to the defendant at the discretion of the trial court:

**B.  Disclosure by the Commonwealth**

(2) Discretionary with the Court . . .

(b) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial; . . .

Pa.R.Crim.P. Section 305(B)(2)(b). The prosecution must make available, upon request, during the trial all relevant pre-trial statements of witnesses in the possession of the

Commonwealth. *Commonwealth v. Meo,* 362 Pa.Super.
328, 524 A.2d 902 (1987) (citations omitted); *see Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980 (1984).
Defense counsel is allowed access to such statements "so
that he may uncover inconsistencies between a witness'
pre-trial statements and his testimony at trial." *Meo,* 362
Pa.Super. at 334, 524 A.2d 902, *quoting Commonwealth v.
Rines,* 247 Pa.Super. 429, 434, 372 A.2d 901, 903–904 (1977).

The trial court conducted a hearing to determine whether
the materials requested by Mehalic were available to the
Commonwealth. Judge Loughran adjudged that the Commonwealth had made good faith efforts to locate the
records, and, if the records existed, they were not possible
to obtain. After a review of the hearing transcript regarding this issue, we agree with the trial court's assessment.

Trooper Clifford Jobe Jr. of the Pennsylvania State Police
testified, in pertinent part: Daniel Myshin, the Assistant
District Attorney for Westmoreland County, asked Jobe to
contact all of the agencies involved in the original investigation of Topper to obtain additional discovery information;
Jobe contacted officials of the DEA, the Maryland State
Attorney's Office, Maryland State Police, and the West
Virginia State Police in an attempt to acquire discoverable
material; Jobe was informed by representatives of each of
those organizations that any and all discoverable material
had already been provided; Jobe unsuccessfully attempted
to locate or contact the chief of police of the defunct
Emmitsburg Police Department; Jobe had received from
the Maryland State Attorney's Office the police reports
relative to this case.

Joseph Flannery testified that he was the DEA agent
present at the interview of Topper. Flannery stated that he
did not take any notes at, or subsequent to, the interview.

Myshin, the Assistant District Attorney, testified: On 10
November, Myshin and Mehalic's counsel met in Judge
Ambrose's chambers; at that time, Mehalic's counsel requested any additional discovery pertinent to the charges
against Topper in Maryland; Mehalic's counsel requested,

and was given, a continuance; Myshin discussed how to get the information with Troopers Jobe and King; Myshin spoke with officials of the Maryland State Attorney's Office, and he received a letter from them confirming that they did not have any of Topper's statements in their possession; Myshin contacted the City Council Building in Emmitsburg and inquired about the police department and the whereabouts of the former police chief; "Christy" informed Myshin that the police department ceased to exist and the whereabouts of the police chief were unknown; the Mayor of Emmitsburg informed Myshin that all records from the police department would be in the possession of the police chief; and, Topper told Myshin that Topper did not make any statements to West Virginia authorities.

After hearing all of this testimony, the trial court granted a continuance until the next day to enable the Commonwealth to try to locate any additional statements if they existed. The next day, Trooper Jobe was recalled to the witness stand, and he testified with respect to action during the continuance, as follows: he spoke to Topper's attorney who reported that he was unaware of any statements made by Topper to West Virginia officials; he contacted the former police chief; the former police chief asserted that he did take notes at a meeting with Topper, that he was not in possession of any files, and that the campus police at West Virginia University at Morgantown might have notes; the university police did not possess notes of conversations with Topper; and, Jobe spoke with DEA officials who again denied having any notes of interviews with Topper.

Mehalic has failed to establish that the notes taken by the former police chief still existed at the time of trial. The Commonwealth conducted an exhaustive search in a vain attempt to locate notes of interviews with Topper. Because the notes, if they had existed, were neither in the possession of the Commonwealth nor attainable by the Commonwealth after extensive efforts, the Commonwealth cannot be deemed remiss in failing to provide them to the defense. Accordingly, the trial court did not abuse its discretion in

refusing to grant a longer continuance to search for these phantom notes.

V.  Commonwealth's Use of Prior Consistent Statements

Mehalic avers that on two instances the Commonwealth impermissibly bolstered the testimony of Topper by utilizing prior consistent statements.  First, the following dialogue occurred during direct examination of Topper:

**Miss Pickering** (Assistant District Attorney):  Whose cocaine was that?

**Topper:** That was mine.

**Miss Pickering:**  Did you tell the police that?

**Topper:**  Not at the time of arrest.

**Miss Pickering:**  Did you at some other time?

**Topper:**  Yes, I did....

**Mr. Sharon** (Mehalic's Attorney):  Objection hearsay.

Notes of Testimony, 6–12 January 1987, page 110.  Second, a similar line of questioning was objected to as hearsay by Mehalic's counsel later in the direct examination of Topper.

In Mehalic's post-trial motions and on appeal, Mehalic has abandoned the hearsay objections and has asserted a new theory of error.  This court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal.  *Commonwealth v. Gordon,* 364 Pa.Super. 521, 542, 528 A.2d 631, 638 (1987) (*per curiam* ) (citations omitted).  A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief.  *Gordon,* 364 Pa.Super. at 543, 528 A.2d 631.  It is a firm rule in this jurisdiction that if the ground upon which an objection to the admission of evidence is specifically stated, all other reasons for the exclusion of the evidence are waived and may not be raised thereafter.  *Commonwealth v. Williams,* 476 Pa. 557, 569, 383 A.2d 503, 509 (1978); *Commonwealth v. Harley,* 275 Pa.Super. 407, 418 A.2d 1354 (1980).  Mehalic never objected to the above-mentioned testimony on the grounds that the Commonwealth was using prior consistent statements to bolster Topper's testi-

mony. Consequently, Mehalic has waived this issue on appeal.

## VI. Challenge to Omission of a Requested Jury Instruction

■ It is Mehalic's allegation that the trial court erred in failing to instruct the jury that Topper's drug conviction may be used to adversely reflect upon his credibility. "It is well settled that a witness may be impeached on the basis of a prior conviction only if the crime involves dishonesty or false statement." *Commonwealth v. Williams*, 371 Pa.Super. 509, 512, 538 A.2d 557, 558 (1988), *quoting Commonwealth v. Penn*, 497 Pa. 232, 244, 439 A.2d 1154, 1160 (1982), *cert. denied*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857.

> Evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Williams*, 371 Pa.Super. 512–513, 538 A.2d 557, *quoting Commonwealth v. Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987). *"Crimen Falsi"* is defined as an "offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on witness' propensity to testify truthfully." Black's Law Dictionary 335 (5th ed. 1979).

Topper pled guilty to a charge of possession of cocaine. The possession of narcotics is not an offense which involves an element of deceitfulness or falsification. *See Commonwealth v. Candia*, 286 Pa.Super. 282, 288, 428 A.2d 993, 996 (1981) (Guilty plea on a marijuana charge is not a *crimen falsi* offense.); *Commonwealth v. Hayes*, 314 Pa.Super. 112, 127, 460 A.2d 791, 798 (1983) (Spaeth, J., dissenting); *United States v. Thompson*, 559 F.2d 552 (9th Cir., 1977). Further, the trial court errs only when its refusal to read a

tendered point for charge to the jury is prejudicial. *Commonwealth v. Potts*, 314 Pa.Super. 256, 460 A.2d 1127 (1983); *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977). Clearly, the trial court did not commit error by refusing to give Mehalic's proffered jury instruction when the evidence contained in the body of the instruction was inadmissible to impeach Topper's credibility. Accordingly, we find no merit to this claim.

## VII. Challenge to the Discretionary Aspects of Sentencing

Lastly, Mehalic avers that, when sentencing him, the trial court failed to give the proper consideration to the extent of his cooperation with federal authorities, to his good standing in the community, and to the sentence imposed on Topper. All of these sentencing factors are relevant to the discretionary aspects of sentencing. As such, the allowance of an appeal is discretionary with this court. 42 Pa.Cons.Stat.Ann. Section 9781(b); *Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988). The Pennsylvania Rules of Appellate Procedure mandate that any party who challenges the discretionary aspects of a sentence must set forth, in his or her brief, a concise statement of the reasons relied upon for allowance of an appeal. *See* Pa.R. App.P. 2119(f). A failure to include a concise statement of the reasons relied upon for allowance of appeal, as required by rule 2119(f), renders the appeal defective. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The defect, however, is procedural, and it may be waived by the Appellee. *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (*en banc*).

In the case of waiver by the Appellee, we shall determine whether the Appellant has presented a substantial issue regarding the alleged inappropriateness of the sentence. *Krum*, 367 Pa.Super. at 520, 533 A.2d 134. Only when it appears that there is a substantial question that the sentence imposed is not appropriate will the discretionary aspects of the sentence be reviewed. 42 Pa.Cons.Stat.Ann. Section 9781(b); *Commonwealth v. Stalnaker*, 376 Pa.Su-

per. 181, 545 A.2d 886 (1988); *Commonwealth v. Darden,* 366 Pa.Super. 597, 531 A.2d 1144 (1987). The determination of whether the Appellant has raised a substantial question rests within the sound discretion of this court. *Felix,* 372 Pa.Super. at 151, 539 A.2d 371. We must then review the Appellant's brief, not the record, to determine whether a substantial question has been raised. *Tuladziecki,* 513 Pa. at 513, 522 A.2d 17. For the limited purpose of determining whether a substantial question exists, we must accept Appellant's assertions of fact as true. *Commonwealth v. DeSanto,* 379 Pa.Super. 435, 550 A.2d 236, 238 (1988). We find that Mehalic has presented a substantial question for review. We therefore allow this appeal.

In *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115, 121 (1987), this court, citing *Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978), stated, in pertinent part:

Imposition of a proper sentence under the Sentencing Code is a matter vested in the sound discretion of the trial court whose determination must be respected unless it is a manifest abuse of discretion.... The trial court must thoroughly examine the facts and circumstances of the crime and the background and character of the defendant.... likewise, the court should consider any information in the record bearing on degree of punishment.

*Losch,* 369 Pa.Super. at 204, 535 A.2d 115, *citing Knight,* 479 Pa. at 212–213, 387 A.2d 1297. If a sentence imposed is within statutory limits, there is no abuse of discretion unless the sentence is so manifestly excessive as to inflict too severe a punishment. *Commonwealth v. Martin,* 328 Pa.Super. 498, 501, 477 A.2d 555, 557 (1984) (citations omitted).

On 21 December 1987, the trial court conducted a lengthy hearing at which witnesses from Mehalic's community presented character testimony on his behalf. The trial court ordered a presentence investigation, and the trial court presided over an *in camera* discussion between the parties concerning Mehalic's cooperation with federal authorities. A careful review of the record belies Mehalic's

contentions and unequivocally indicates that Judge Loughran considered the testimony of Mehalic's character witnesses, Mehalic's cooperation with federal authorities, the discrepancy between his sentence and Topper's sentence, the presentence report, and other factors.[5] *See Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). In addition, the sentence was within statutory limits. Therefore, we find that the trial court did not abuse its discretion in sentencing Mehalic.

Judgment of Sentence affirmed.

---

**5.** Topper pled guilty to one count of possession of cocaine while Mehalic was convicted by the jury of seven narcotics offenses. Moreover, there is no requirement that a court explain disparity between sentences in different jurisdictions. *See Commonwealth v. Hainsey,* 379 Pa.Super. 376, 550 A.2d 207 (1988) (sentences disparate in same county arising out of same transaction or occurrence).