**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David FISHER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 5, 2000.
Filed Dec. 8, 2000.

Court did not mention any requirement of corroborating evidence in the Rule or its comment.

Robert F. Pappano, Brookhaven, for appellant.

Patrick L. Meehan, Assistant District Attorney, Media, for Com., appellee.

Before JOHNSON, J., EAKIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 Appellant David Fisher appeals from the Judgment of Sentence of fifteen (15) to thirty-six (36) months' incarceration, followed by three years probation, imposed after a jury found him guilty of assault, endangering the welfare of a child and possession of an instrument of crime.[1] After review, we affirm.

¶ 2 In late 1997 Appellant was engaged to be married to a Ms. Jennifer Childs who had a minor son, D.C.[2] Trial Court Opinion, dated 5/3/2000, at 3. In mid-December 1997 Appellant moved into Ms. Child's house. Shortly thereafter, D.C. began exhibiting unusual behavior such as sleeping face down in bed with his arms and legs crossed behind his back and also pulling his pajamas up to his shoulders. *Id.* at 4. D.C. also developed physical ailments such as bladder failure and alopecia areata.[3] *Id.* In July of 1998 D.C. became emotional-ly distraught while visiting his grandparents and told his grandparents that Appellant had been beating him and forcing him to sleep in unnatural positions as punishment for being nice to his natural father. *Id.* at 5. The grandparents informed D.C.'s mother who immediately contacted the police. After investigation and interviews with D.C., the police subsequently arrested Appellant.

¶ 3 At trial D.C. related the specific instances of abuse which he suffered at the hands of Appellant:

[D.C.] testified that Appellant had used a belt to beat him when he had not done well in school. He also testified that Appellant would at times take [D.C.] into the basement after Ms. Childs had fallen asleep, pinch his ears and punch him in the stomach. Appellant had also on occasion pushed [D.C.] down the steps of the house that [D.C.] and Jennifer Childs lived in. Once, after [D.C.] had been visiting with his natural father, Appellant choked [D.C.], and told him never to be nice to his real father again. [D.C.] momentarily passed out, and then woke up before Ms. Childs arrived home. Appellant then told Jennifer that [D.C.] had been choking on a piece of candy, and that was why he had been unconscious.

[D.C.] also testified ... that Appellant once placed a bag over [D.C.'s] head while they were on their way to the video store. After placing the bag over [D.C.'s] head, Appellant acted as though he was going to throw [D.C.] in a dumpster. Appellant did not in fact throw [D.C.] into the dumpster, but [D.C.] testified that Appellant said he would throw him in the dumpster if he was nice to his real father ever again. [D.C.] testified that Appellant once had forced [D.C.] to

---

1. 18 Pa.C.S.A. §§ 2701, 4304 and 907 respectively.

2. Ms. Child's and D.C.'s natural father had never married but they still maintained contact with one another from the time of D.C.'s birth.

3. Alopecia is a form of progressive baldness characterized by the total loss of hair in patches from portions of the scalp. *See Steadman's Concise Medical Dictionary,* 3d. Edition 1996

lick his own fecal matter from a piece of [D.C.'s] used toilet paper. Also on a separate occasion, Appellant held a knife to [D.C.'s] penis, telling him that if he was ever nice to his real father again, he would cut "it" off.

*Id.* at 5–6. On November 5, 1999 the jury found Appellant guilty of the three aforementioned offenses.

¶ 4 On January 6, 2000, prior to his sentencing, Appellant, through trial counsel, filed a written pleading which he entitled a "Motion for Extraordinary Relief Pursuant to Pa.R.Crim.P. 1405(b)." However the Trial Court did not rule on this motion prior to sentencing but instead elected to treat it as a premature post-sentence motion and deferred action on it. The Trial Court then proceeded to sentence Appellant on February 1, 2000 to the term of incarceration set forth above. Subsequently, on March 7, 2000 the Appellant, now represented by new counsel from the public defender's office, withdrew the motion. Appellant thereafter filed his notice of appeal on March 15, 2000.

■■ ¶ 5 We are compelled by the circumstances of these proceedings to remind trial counsel and the Trial Court of the necessity of adhering to the express procedures set forth in Pennsylvania Rule of Criminal Procedure 1405(B). Rule of Criminal Procedure 1405(B) provides:

B. Oral Motion for Extraordinary Relief.

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an **oral motion** in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge **shall** decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

\* \* \* \* \* \*

Pa.R.Crim.P. 1405(B)(1), (2) (emphasis supplied). Hence, the plain terms of this Rule do not permit the filing of a written motion for extraordinary relief prior to sentencing. *Commonwealth v. Davis,* 708 A.2d 116, 119, n. 2 (Pa.Super.1998).

¶ 6 Moreover, Rule 1405(B)(1) clearly contemplates that any oral motion prior to sentencing be made only in exceptional circumstances. This Rule was not intended to provide a substitute vehicle for a convicted defendant to raise matters which could otherwise be raised via post sentence motion. As more fully set forth in the Explanatory Comment to this Rule:

Under Section B, when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed.

Pa.R.Crim.P. 1405, Explanatory Comment.

■ ¶ 7 Also, if a motion for extraordinary relief is made prior to sentencing, Rule 1405(B)(2) specifically requires that the trial court rule on the matters raised by such a motion prior to the imposition of its sentence. *See id.* ("Under paragraph B(2), the motion must be decided before sentence is imposed, and sentencing may not be postponed in order to dispose of the motion.") Thus, this rule does not allow a trial court to defer resolution of the mat-

ters raised by a motion for extraordinary relief until after sentence is imposed.

¶ 8 Nevertheless, we will not disturb the Trial Court's decision in this instance to treat Appellant's written motion for extraordinary relief as a post-sentence motion pursuant to Pa.R.Crim.P. 1410. Penalizing the Appellant under these circumstances, for a procedural default not of his own creation, would not advance the primary purpose of our Rules of Criminal Procedure, which is to "provide for the just determination of every criminal proceeding." Pa.R.Crim.P. 2.

¶ 9 Since the Trial Court elected to treat Appellant's written motion for extraordinary relief as a post-sentence motion pursuant to Pa.R.Crim.P. 1410, Appellant had thirty days from the date of his withdrawal of it to file his notice of appeal. *Commonwealth v. Miller*, 715 A.2d 1203, 1206 (Pa.Super.1998). Consequently, since Appellant filed his notice of appeal eight (8) days after formally withdrawing the motion, this appeal is timely.

¶ 10 On appeal to our Court Appellant presents two issues for our consideration:

> I. WHETHER THE TRIAL COURT ERRED IN PROHIBITING APPELLANT FROM INTRODUCING CHARACTER AND REPUTATION TESTIMONY AS TO HIS VERACITY AT TRIAL?
>
> II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION AND PLAYING OF THE COMMONWEALTH'S EXHIBIT A, A COPY OF THE TAPE RECORDING MADE BY THE VICTIM'S MOTHER AS A VIOLATION OF THE BEST EVIDENCE RULE?

Appellant's Brief at 7. We will address these issues *seriatim*.

¶ 11 With respect to Appellant's first issue, he argues that the Trial Court erred by prohibiting him from introducing character evidence at trial to establish that he had a reputation for truthfulness and veracity. Appellant specifically contends

that he should have been permitted to introduce such evidence since testimony given at trial and cross-examination of him by the Commonwealth had placed the question of his veracity at issue. After review, we must disagree.

▬▬ ¶ 12 We note at the outset of our discussion of this issue that an appellate court may reverse a trial court's ruling on the admissibility of evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Minerd*, 562 Pa. 46, 53–54, 753 A.2d 225, 229 (2000). *Commonwealth v. Hawk*, 551 Pa. 71, 77, 709 A.2d 373, 376 (1998). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Hess*, 745 A.2d 29, 31 (Pa.Super.2000).

¶ 13 The relevant Pennsylvania Rule of Evidence which governs the admissibility of this type of character evidence is Rule 608(a) which provides:

> (a) Reputation Evidence of Character
>
> The credibility of a witness may be attacked or supported by evidence in the form of reputation as to character, but subject to the following limitations:
>
> (1) the evidence may refer only to character for truthfulness or untruthfulness; and
>
> (2) **evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.**

Pa.R.E. 608(a) (emphasis supplied).

▬▬ ¶ 14 This Rule is consistent with prior Pennsylvania caselaw. As our Court stated in a case decided previous to the promulgation of the Rules of Evidence:

> In Pennsylvania, a witness's truthfulness may be attacked by showing that he or she has a bad reputation for truth and

veracity. If a witness is impeached by proof of bad reputation for truth and veracity, evidence may then be admitted to prove good reputation for truth and veracity. Evidence in support of the general reputation of a witness for truth and veracity, however, is not competent until his or her general reputation has been assailed. Every witness puts his or her character in issue; but until evidence tending directly to impeach it is produced, the law presumes it to be good, and therefore testimony to prove it good is superfluous.

*Commonwealth v. Fowler*, 434 Pa.Super. 148, 642 A.2d 517, 518 (1994), *appeal denied*, 539 Pa. 688, 653 A.2d 1227 (1994) (internal citations and quotations omitted). Hence "bolstering evidence ... is not admissible unless the character of the witness has first been attacked, and even then, only at the court's discretion." *Commonwealth v. Boyd*, 448 Pa.Super. 589, 672 A.2d 810, 812 (1996), *appeal denied*, 546 Pa. 661, 685 A.2d 541 (1996) quoting *Commonwealth v. Smith*, 389 Pa.Super. 626, 567 A.2d 1080, 1082 (1989), *appeal denied*, 527 Pa. 623, 592 A.2d 44 (1990).

■ ¶ 15 Character means one's general reputation in the community. *Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 251 (1997) citing *Commonwealth v. Jones*, 280 Pa. 368, 370, 124 A. 486, 486 (1924). Our careful review of the testimony of the various witnesses adduced at trial and the cross-examination of the Appellant by the Commonwealth indicates that at no time did the Commonwealth attack, impugn or otherwise besmirch Appellant's general reputation in the community for telling the truth. The Commonwealth elicited no evidence to establish or suggest that Appellant's character was such that he was known to others in the community to be a person who was prone to lie or otherwise make dishonest statements. It is true that the Commonwealth attempted to establish that the victim's version of events was more credible than the Appellant's, by vigorously cross-examining the Appellant and having the victim testify in rebuttal to Appellant's testimony. However, these factors in and of themselves did not allow Appellant to enhance or bolster his testimony in the eyes of the jury by introducing collateral evidence to establish his reputation for telling the truth. As our Court said in *Boyd, supra*:

> It is within the ordinary capacity of a jury to assess whether a particular witness is lying, and resolving questions of a witness's credibility is a function reserved exclusively for the jury. Allowing a defendant to offer bolstering evidence of his or her good reputation for truth and veracity whenever the defendant's testimony contradicts the testimony of the Commonwealth's witnesses would infringe on the credibility determining function of the jury.

*Id.* 672 A.2d at 812 (citations omitted). Thus, we find no abuse of discretion on the part of the Trial Court in barring Appellant from introducing character evidence to establish his general reputation in the community for veracity.

¶ 16 Appellant next argues that the Trial Court erred by allowing the admission into evidence at trial tape recordings of telephone messages that Appellant had left on the voice mail system at his fiancée's place of employment. Appellant contends that the introduction of this evidence violated the "Best Evidence Rule." After review, we must disagree with Appellant's assertion.

¶ 17 The "Best Evidence Rule," as articulated by the common law, very literally only pertained to writings or other documentary evidence. As our Court has described the common-law rule in a prior case:

> The "best evidence" rule limits the method of proving the terms of a writing to the presentation of the original writing, where the terms of the instrument are material to the issue at hand, unless the original is shown to be unavailable through no fault of the proponent. *McCormick, Evidence* 560 (2nd ed.1972).

The Pennsylvania courts use the "best evidence" rule when the contents of documentary evidence are at issue. *Ledford v. Pittsburgh & Lake Erie R.R. Co.,* 236 Pa.Super. 65, 345 A.2d 218 (1975). The best evidence rule is controlling only if the terms of a writing must be proved to make a case or provide a defense. McCormick, *supra.*

*Commonwealth v. Harris,* 719 A.2d 1049, 1051 (Pa.Super.1998).

¶ 18 However, the Pennsylvania Rules of Evidence have expanded the scope of the common-law rule by applying it to other forms of evidence such as recordings and photographs. The common-law rule has been incorporated into and amplified by Pennsylvania Rule of Evidence 1002 which provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, by other rules prescribed by the Supreme Court, or by statute.

Pa.R.E. 1002.[4]

■ ¶ 19 Nevertheless Rule 1002 is applicable only in circumstances where the contents of the writing, recording or photograph are integral to proving the central issue in a trial. *See* Pa.R.E. 1004(4) ("The original is not required, and other evidence of the contents of a writing, recording or photograph is admissible if: The writing, recording, or photograph is not closely related to a controlling issue.") Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case. *Commonwealth v. Townsend,* 747 A.2d 376, 380 (Pa.Super.2000), *appeal denied,* 563 Pa. 661, 759

A.2d 385 (June 15, 2000); *Harris, supra,* 719 A.2d at 1052.

■ ¶ 20 As the Trial Court found with respect to the contents of the tape recordings and the manner in which they were procured:

> The messages displayed a mixture of emotions from Appellant, starting off in emotional depression over the failure of the relationship, and then moving to anger over the accusations. Finally, Appellant shifted to an almost taunting tone, telling Miss Childs that no one would ever believe her, her "nut-ball" son, or "nut-ball" father.
>
> \*       \*       \*       \*       \*       \*
>
> Miss Childs testified that she received these messages on her work voice mail system during a time when she had taken a leave of absence from work. N.T. 10/29/99, p. 62, ln. 5–16 Miss Childs also testified that she saved the messages on the voice mail system to preserve them as evidence. *id.* In November of 1998, [Miss] Childs decided to make a copy of the messages by placing a hand held tape recorder to the speaker phone, and recording the messages as they played. *id.* at p. 8, ln. 5–14; p 15, 2–14.

Trial Court Opinion, *supra,* at 6, 9.

¶ 21 The Trial Court also heard testimony from an employee of the company that manufactures the voice mail system used by Miss Child's company. The employee testified that once a voice message is received by the system it is digitized on a magnetic disk or "hard drive" of the company's voice mail storage system. N.T. Trial, 10/29/98, at 23. Once stored on the hard drive the message cannot be further modified or otherwise tampered with by the employee. *Id.* at 37–38.

---

4. Under Pa.R.E. 1001 writings and recordings are: "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation." Pa.R.E. 1001(1). Photographs encompass "still photographs, X-ray films, video tapes and motion pictures." Pa. R.E. 1001(2).

¶ 22 Our review of these factors compels us to conclude that since these tape recorded messages did not provide factual substantiation which established that Appellant committed the offenses for which he was charged, the Commonwealth did not need to prove the contents of the tape recordings to prove the elements of the offenses for which Appellant was convicted *i.e.* assault, endangering the welfare of a child and possession of an instrument of crime. The Commonwealth's proof of the elements of these offenses depended on the testimony of the victim, D.C. As a result, since the tape recordings of Appellant's phone messages did not provide evidence which established the fundamental components of any of these offenses, the Commonwealth was not required to introduce the original recordings from the voice mail system under Pa.R.E. 1002. *C.f. Durkin v. Equine Clinics*, 313 Pa.Super. 75, 459 A.2d 417, 419 (1983) (in negligence lawsuit introduction of transcript of tape-recorded interview rather than original recording not a violation of best evidence rule since contents of the interview were collateral to the central issue of whether or not defendant was negligent). Because the tape recorded copies of the phone messages were admissible under Pa.R.E. 1004(4), and also properly authenticated, we find no error on the part of the learned trial judge in admitting them into evidence. *See e.g. Commonwealth v. Taraschi*, 327 Pa.Super. 179, 475 A.2d 744, 753 (1984) ("Tape recordings are admissible when they are properly identified as a reproduction of what has been said and the voices are properly identified.").

¶ 23 We note also that Pa.R.E. 1003 expressly allows the admission of duplicates "unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Pa.R.E. 1003. Appellant does not challenge the authenticity of the original messages recorded on Miss Childs' company voice mail system, nor the authenticity of the tape recordings. We also do not see any other evidence of record to indicate that the recordings were fraudulent. Nor do we see any evidence of record which would establish that the admission of the duplicates was unfair to Appellant under these circumstances. Thus, the tape recordings were also admissible under Pa.R.E. 1003.

¶ 24 Furthermore, Pa.R.E. 1004(1) provides:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if-

(1) ... All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

Pa.R.E. 1004(1).

¶ 25 As the Trial Judge found:

Miss Childs testified that in May of 1999, she was being promoted, and as a result, her employer was going to assign her a new phone and voice mail number. *id.* at p. 9 ln. 10–24. Jennifer Childs further stated that the company was going to delete the messages if she did not do so herself. *id.* Since the messages were gong to be deleted anyway, and since she didn't want anyone else in the company to hear the messages outside of company security, whom had already heard the recording for investigation purposes, she personally deleted the messages from the system.

\*        \*        \*        \*        \*        \*

As the record establishes, the original messages had not been erased through fraudulent behavior. Miss Childs saved the messages on the voice mail system as long as she possibly could. In fact, she saved them until she was told by the company that they would be erased automatically because of her promotion. Further, ..., the messages in the system did not exist as a recording on their own, and could not be tampered with once the messages were complete. The recorded copy was made to preserve the

evidence, and was the only remaining existence of the messages.

Trial Court Opinion, *supra,* at 9–11.

 ¶ 26 The employee of the manufacturer of the phone system also testified that it was not possible to remove the hard drive containing all stored telephonic messages without disrupting the entire company phone system and rendering it inoperative. N.T., 10/29/98, at 26, 28. Hence, since the original recorded messages were not available at the time of trial, through no fault of the proponent, the Commonwealth, the tape recorded copies were also admissible under Pa.R.E. 1004(1).

¶ 27 Having reviewed both of Appellant's issues and having found them to be without merit we affirm the judgment of sentence.

¶ 28 Judgement of Sentence affirmed.