J-S66012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THERESA GORDON ISABELLA, | |
| Appellant | No. 485 MDA 2014 |

Appeal from the Judgment of Sentence September 9, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003829-2011

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 18, 2014**

Appellant, Theresa Gordon Isabella, appeals from the judgment of sentence of an aggregate term of seven years' probation, imposed after she was convicted by a jury of numerous counts of forgery, stalking, and harassment.  We affirm.

The trial court summarized the evidence presented at Appellant's jury trial as follows:

> The pertinent facts set forth in the 535 pages of the trial record demonstrate that [Appellant] resided in property adjoining the Yurick family home and Mr. Yurick's in-laws.  The jury found [Appellant] engaged in a course of conduct mostly consisting of submitting fraudulent written documents that caused numerous magazine subscriptions to be delivered to James and Heather Yurick, among others.  The Commonwealth presented eleven witnesses, to include those victimized by [Appellant], all of whom verified they did not order the various, numerous publications but notwithstanding received the magazines and bills due and owing therefore.  The victims were compelled to spend countless hours contacting publishers in order to stop the unwanted subscriptions, eliminate the bills, and

obtain copies of the order forms to investigate the source therefore.

Charmaine Maynard, a friend of [Appellant's], testified [Appellant] did not like the Yurick children. She stated [Appellant] set her alarm in order to walk her dog (a German Shepherd) near the Yurick children at the time the children would walk to the school bus stop and/or home in an attempt to annoy and/or scare them. She further testified [Appellant] attempted to cajole her into calling or making a written complaint to the bank where Sally Yurick was employed.[13] Notably, this witness was recalled at trial because [Appellant] informed her "you'll be sorry[,"] a statement which occurred outside the courtroom subsequent to Maynard's testimony.

[13] Sally Yurick is married to James Yurick's father.

Additionally, and by way of history, the Commonwealth presented the testimony of Chief Winters who noted complaints from both parties during the time frame at issue. In addition to the fraudulent magazine subscriptions, he verified complaints received from the Yuricks relating to concerns [Appellant] frequently walked her German Shepherd dog between the Yurick children and the school bus stop and/or family residence, which served to further exacerbate the situation. The Chief detailed efforts wherein he attempted to reason with [Appellant] by sharing the Yurick's concerns, to no avail.[14]

[14] Other incidents are set forth in the testimony related to [Appellant's] annoying conduct such as throwing walnuts against the Yurick home and placing animal feces along the property line.

The Chief testified that based upon the information received with the passage of time, coupled with verification of other witnesses, it became apparent to him there was sufficient evidence to warrant further investigation of [Appellant's] involvement in the fraudulent activities surrounding the magazine subscriptions. Accordingly, he enlisted the assistance of the Pennsylvania State Police to conduct handwriting analysis on the various publication order forms. To assist in the analysis, the Chief was able to obtain a civil complaint filed by [Appellant] in 2007 from a local Magistrate's office. Thereafter, he applied for and obtained a search warrant for handwriting exemplars from [Appellant] for analysis.

Corporal Mark Gardner of the Pennsylvania State Police was called on behalf of the Commonwealth. He is employed as a Questioned Document Examiner in the Forensic Document Lab.[15] He testified he examined the various questioned documents and the known standards of [Appellant]. Upon completing the handwriting analysis, he testified with the requisite degree of certainty that [Appellant] authored the questioned documents that served to place the magazine orders.[16]

[15] The Corporal was qualified as an expert and admitted without objection.

[16] We note that to the extent the expert's opinion was legally insufficient as it related to analysis of certain questioned documents, those counts (Counts 1, 2, 3, and 5 of 4136 of 2012) were dismissed by the Court.

Trial Court Opinion (TCO), 5/19/14, at 3-5.

Based on this evidence, the jury convicted Appellant of multiple counts of the above-stated offenses and she was sentenced to an aggregate term of seven years' probation. Appellant filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, she raises three issues for our review:

A. Whether the [t]rial [c]ourt erred in denying [Appellant's] Motion for Mistrial when the jury was tainted by an alternate juror who expressed to the other jurors that she was going through similar neighbors' issues, and felt sympathy to the alleged victims in this case?

B. Whether the [t]rial [c]ourt erred in denying [Appellant's] Motion for a Mistrial due to [the] Commonwealth's Attorney's prosecutorial misconduct in attempting to intimidate a character witness of [Appellant's]?

C. Whether many of the exhibits, which were photocopies, should not have been admitted as they are not the best evidence?

Appellant's Brief at 4.[1]

Appellant's first and second issues involve the court's denial of her motions for a mistrial, which we review under the following standard:

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice.

***Commonwealth v. Kerrigan***, 920 A.2d 190, 199 (Pa. Super. 2007) (quoting ***Commonwealth v. Sanchez***, 907 A.2d 477, 491 (Pa. 2006) (internal citation omitted)).

First, Appellant contends that the court should have granted her motion for a mistrial "when an alternate juror began to complain aloud, in the vicinity of the other members of the jury, [about] her potential bias in favor of the victims because she had similar problems with her neighbors." Appellant's Brief at 18.  Appellant also claims that

> [i]t was established that [the] [a]lternate [juror] brought a notebook from her van into the courthouse that contained information she compiled regarding her situation, which was, in her account, very similar to the facts of the instant case.  During a break, she repeatedly told several of the other jurors about how she was currently dealing with a situation with her neighbors in which she was being harassed.  Most significantly, … several other jurors overheard [the] [a]lternate [juror] state that she "sympathized" with Mr. Yurick the alleged victim in this case.

_____

[1] We have reordered Appellant's issues for ease of disposition.

*Id.* at 19. Appellant avers that "[t]his alternate juror's conduct amounted to an extraneous influence that prejudiced the jury against [Appellant]." *Id.* Thus, she maintains that a mistrial was warranted.

In *Commonwealth v. Sneed*, 45 A.3d 1096 (Pa. 2012), our Supreme Court stated:

> An extraneous influence may compromise the impartiality and integrity of the jury, raising the specter of prejudice. *See Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 604 A.2d 1010, 1015–16 (1992) (*plurality*). The relevant inquiry is whether the extraneous influence caused "a reasonable likelihood of prejudice." *Id.* at 1016; *see also Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733, 739 (1983) (requiring showing that contact between member of the jury and court officer resulted in "a reasonable likelihood of prejudice" to defendant.). In making the "reasonable likelihood of prejudice" determination, the court must consider: "(1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature." *Carter,* 604 A.2d at 1017 (footnote omitted). The burden is on the party claiming prejudice. *Id.*

*Id.* at 1115.

In explaining why it denied Appellant's motion for a mistrial, the trial court emphasized that after learning of the alternate juror's conduct, the court

> dismiss[ed] her and questioned all the remaining jurors individually. While some jurors (not all) heard the utterances of [the] [a]lternate [j]uror …, all jurors questioned confidently assured this court and counsel that the statements would not affect their ability to be fair and to follow the [c]ourt's instructions. As our Superior Court aptly stated in *Commonwealth v. Miller*, [371 A.2d 1362, 1366 (Pa. Super. 1977),] while "…the defendant is entitled to a trial by a panel of

- 5 -

impartial and indifferent jurors, [citation omitted] … [t]here is nothing … which guarantees a perfect trial."

> Based upon the individual colloquy with each of the jurors and having concluded there existed no resulting prejudice, we believe that we properly exercised our discretion in denying the motion seeking a mistrial.

TCO at 6 (footnoted omitted).

Appellant argues that the court's conclusion that she was not prejudiced by the alternate juror's conduct was erroneous because the court applied "a subjective standard in determining if the jurors were influenced by [the] [a]lternate [juror's] actions[,]" not "whether an objective, typical juror would be affected." Appellant's Brief at 20. In support of this argument, Appellant relies on our Supreme Court's decision in **Carter**. However, for the reasons that follow, we find **Carter** distinguishable from the present case.

In **Carter**, the question before the Court was whether certain jurors' viewing of a television broadcast "was a proper basis for *impeaching the jury's verdict*." **Carter**, 604 A.2d at 1012 (citations omitted; emphasis added). In answering this question, the Court examined "[t]he rule in Pennsylvania … that a juror is incompetent to testify as to what occurred during deliberations." **Id.** at 1013. The Court explained:

> This rule is often referred to as the "no impeachment" rule. However, in order to accommodate the competing policies in this area, a narrow exception has been recognized. The exception permits "post trial testimony of extraneous influences which might have affected [prejudiced] the jury during deliberations." Under this exception, **the juror may testify only as to the existence of the outside influence, but not as to the effect**

- 6 -

**this outside influence may have had on deliberations. Under no circumstances may jurors testify regarding their subjective reasoning processes.**

*Id.* (citations omitted) (emphasis added). The Court further held:

Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. Because a trial judge is precluded from considering evidence concerning the subjective impact of an extraneous influence on any juror, it has been widely recognized that the test for determining the prejudicial effect of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence.

*Id.* at 1016 (citations omitted).

In our view, *Carter* only precludes a court from considering "the subjective impact of an extraneous influence" on jurors' *deliberations and/or verdict*. Here, the jurors were questioned on the second day of trial, well before they began deliberating or reached a verdict. *See* N.T. Trial, 7/29-7/31/14, at 108-139. The court asked the each of the jurors if they believed they were able to disregard the alternate's conduct and proceed impartially in spite of it, and the jurors all indicated that they were able to do so. *Id.* at 121-136. Consequently, the court concluded that Appellant was not prejudiced by the alternate juror's 'extraneous influence.' This pre-deliberation, pre-verdict evaluation of the subjective impact of the alternate juror's conduct on the other jurors did not violate *Carter*. Accordingly, Appellant has not convinced us that the court erred in denying her motion for a mistrial.

In Appellant's second issue, she maintains that the trial court should have granted her motion for a mistrial when the Assistant District Attorney (ADA) "made intimidating comments" to one of Appellant's character witnesses, Pia Taggart.[2]  Appellant's Brief at 23.  The court summarized the factual basis for Appellant's claim as follows:

> As it relates to the allegations of prosecutorial misconduct, the record is clear the … []ADA[] spoke to [Pia Taggart] … prior to her testimony.  [Ms. Taggart] was employed as a *pro se* staff attorney working in the Federal Court in Scranton, Pennsylvania. The ADA had prior contact with [Ms. Taggart] unrelated to this case via telephone and, although the two never met, the ADA approached [Ms. Taggart] prior to her testifying to introduce herself.  In the course of conversation, the ADA acknowledged that she told [Ms. Taggart] "… just be careful because this woman is capable of retaliation."  While counsel for [Appellant] alleged [Ms. Taggart] … was intimidated giving rise to the motion for a mistrial, this Court denied the motion finding no resulting prejudice.[20]
>
> [20]  Parenthetically, we note [Ms. Taggart] testified enthusiastically for [Appellant].

TCO at 6-7.

Appellant initially claims that the trial court erred in ruling on her motion for a mistrial "prior to hearing any testimony" from Ms. Taggart. Appellant's Brief at 25.  Appellant maintains that without such testimony,

_____

[2] Appellant also claims the ADA made improper comments to several other character witnesses in addition to Ms. Taggart.  However, Appellant's Rule 1925(b) statement only challenged the ADA's comments to Ms. Taggart; Appellant did not refer to any remarks made by the ADA to other witnesses. Therefore, Appellant has only preserved her claims regarding the ADA's remarks to Ms. Taggart.  **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

there is no way to know if the ADA's improper remark to Ms. Taggart impacted her testimony. However, Appellant cites no legal authority indicating that the court was required to hear testimony from Ms. Taggart regarding the impact of the ADA's comment. Moreover, considering that Ms. Taggart was *Appellant's* character witness, it is curious that she is unable to elucidate how Ms. Taggart's actual testimony following the ADA's comment differed from the testimony Appellant expected Ms. Taggart to proffer.

In any event, as we stated *supra*, in ruling on Appellant's motion for a mistrial based on the ADA's remark, the trial court was required to evaluate "whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice." ***Kerrigan***, 920 A.2d at 199. The trial court undertook this evaluation, stating:

> Initially, we note that although the ADA's contact with the witness was perhaps ill-advised, in our judgment it was rather innocuous and we fail to see evidence of any intimidation. Moreover, general guidance from our Superior Court demonstrates that "…a new trial is not mandated every time a prosecutor makes an improper remark. To constitute reversible error the language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict.'" [***Commonwealth v. Smith***, 433 A.2d 489, 495-96 (Pa. Super. 1981) (citations omitted).] Here, the jury was not exposed to the statement and we see no other prejudice. Accordingly, [Appellant's] second error complained of is without merit[,] as we believe we exercised appropriate discretion in denying a mistrial.

TCO at 7 (footnote omitted). Based on the court's analysis, we ascertain no abuse of discretion in its decision to deny Appellant's motion for a mistrial. Accordingly, Appellant's second issue is meritless.

Finally, Appellant challenges the trial court's admission of certain documentary evidence.

> [A]n appellate court may reverse a trial court's ruling on the admissibility of evidence only upon a showing that the trial court abused its discretion. "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will."

***Commonwealth v. Fisher***, 764 A.2d 82, 86 (Pa. Super. 2000) (citation omitted).

Appellant argues that "the trial court erred when it allowed photocopies of several magazine subscription cards to be admitted into evidence[,]" as those "photocopies were not the best evidence…." Appellant's Brief at 21. Appellant maintains that the Commonwealth was required to produce the original subscription cards at trial. In support of this argument, Appellant relies on Pennsylvania Rule of Evidence 1002, which incorporates the common law 'best evidence' rule, and states: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. Rule 1002.

However, our Court has stated that "Rule 1002 is applicable only in circumstances where the contents of the writing, recording or photograph

are integral to proving the central issue in a trial." ***Commonwealth v. Fisher***, 764 A.2d 82, 88 (Pa. Super. 2000) (citation omitted). "Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case." ***Id.*** (citations omitted).

Here, Appellant did not object to the admission of the photocopies on the basis that the content of the magazine subscription cards was a central issue at trial. Instead, Appellant objected to the copies because "photocopies have a tendency to be distorted, enlarged, *et cetera*…." N.T. Trial, 7/29/14-7/31/14, at 50. This objection involves an issue with the *appearance* of the photocopies, not their content. On appeal, she reiterates this same argument, again failing to challenge the admission of the photocopies because their content was a pertinent trial issue. Therefore, she has failed to convince us that the best evidence rule applied to preclude the admission of these photocopies.

In any event, even if the best evidence rule did apply to this evidence, we also agree with the trial court that the photocopies were admissible under Pa.R.E. 1003. That rule states: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." The photocopies at issue here constitute 'duplicates.' ***See*** Pa.R.E. 1001(e) ("A 'duplicate' means a copy produced by a mechanical, photographic, chemical,

electronic, or other equivalent process or technique that accurately reproduces the original.").

Instantly, Appellant did not argue at trial that the circumstances of her case made it unfair to admit the photocopies. Additionally, she did not argue that there was a genuine question regarding the authenticity of the *originals*. Instead, as stated *supra*, Appellant simply claimed that "photocopies have a tendency to be distorted, enlarged, *et cetera*…." N.T. Trial, 7/29/14-7/31/14, at 50. While on appeal, Appellant asserts that "there is a genuine question as to the authenticity of the handwriting contained in the original documents," and also argues that "under the circumstances of this case, it would be unreservedly unfair to admit a duplicate in lieu of the original[,]" these arguments were not raised at the time Appellant objected to the admission of the photocopies. Accordingly, these arguments have not been preserved for our review. *See* Pa.R.E. 103(a)(1)(A), (B) (stating "[a] party may claim error in a ruling to admit … evidence only" if the party "makes a timely objection … and … states the specific ground, unless it was apparent from the context[]"). As such, even if the best evidence rule applied, Appellant has not convinced us that the court abused its discretion in admitting the at-issue evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2014