**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARRIE AMARO | : | |
| | : | |
| Appellant | : | No. 381 EDA 2023 |

Appeal from the Judgment of381 EDA 2023 Sentence Entered January 9,
2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009185-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                           **FILED MAY 1, 2024**

Appellant, Karrie Amaro, appeals from the Judgment of Sentence entered on January 9, 2023, following his conviction for Terroristic Threats and Possession of an Instrument of Crime ("PIC").[1]  Appellant argues that in reaching its verdict, the court improperly weighed the evidence presented at his bench trial.  After careful review, we conclude that Appellant failed to preserve his weight challenge for our review.  Accordingly, we affirm.

**A.**

We glean the relevant factual and procedural history from the trial court opinion.  On September 10, 2020, Norman and Gaylord Mercer (collectively "the Mercer Brothers"), argued with Appellant's paramour and her friend inside a deli near the 1200 block of West Ontario Street.  Appellant's paramour

---

[1] 18 Pa.C.S. §§ 2706(a)(1) and 907(a), respectively.

telephoned Appellant, and he came to the deli. When Appellant arrived, the Mercer Brothers and their friends had already left the deli and returned to their U-Haul truck. Appellant and another man confronted them, demanding to know what the Mercer brothers said to the women. Appellant approached Gaylord Mercer's side of the truck, stated "Old head, you don't want none of this," and pulled a firearm partially out of a bag. N.T. Trial, 10/17/22, at 15. Norman Mercer could not find the keys to drive away, and a physical altercation ensued.

When police arrived, Appellant left the scene, but shortly thereafter returned. Police then searched Appellant's vehicle with his consent, but did not recover a firearm. Police arrested Appellant and charged him with, *inter alia*, the above charges.

Appellant proceeded to a bench trial on October 17, 2022. At trial, the Mercer Brothers testified for the Commonwealth. First, Norman Mercer testified in accordance with the above facts. He further testified that the argument in the deli had begun because the Mercer Brothers and their friends were "just like flirting around" with the women, who "didn't like everything that [they] said." *Id.* at 12-13. When asked to describe the firearm, Norman Mercer stated that it "looked like a TEC-9," was a semi-automatic, and was 12-18 inches long, but he noted that he only saw the handle and half of the barrel, and the rest was concealed in a red or white bag. *Id.* at 16. Finally, Norman Mercer testified that he exited the truck after seeing the firearm because he could not find the keys, and he began fighting both Appellant and

his friend. He could not recall who threw the first punch, but did not believe it was him.

On cross-examination, Norman Mercer denied that the men had attempted to hire the women as prostitutes and denied that the women had told police this. He also conceded that there were differences between his testimony and his statement to police, *i.e.*, (1) he had said in his statement that the bag was green and white; (2) he did not say in his statement that Appellant punched him 10 times;[2] and (3) he had said in his statement that one of the men threw a crowbar and broke his window.

Gaylord Mercer testified that the altercation began because Norman Mercer was arguing with a "drug addict" who was "begging" in the deli, and the women did not like that Norman Mercer was arguing with him. *Id.* at 45, 49. Gaylord Mercer testified that the women left to find their friends, who were outside in the car, while the Mercer Brothers and their friends were still in the deli, and that the women's friends confronted them once they returned to the U-Haul.

Gaylord Mercer further testified that Appellant came to his side of the U-Haul and pulled a firearm partially out of a bag. He described the firearm as bigger than a typical handgun, "like a little Uzi," and stated that he saw the clip. He described the bag as white and orange, or white and another color,

---

[2] Norman testified during cross-examination that the fight was brief and lasted "seconds. Maybe minutes[,]" but that "10 punches or more" were thrown. N.T. Trial at 33.

- 3 -

and said that it "looked like a handbag." *Id.* at 54. Finally, he testified that one of the women threw something, breaking their window, and that their friend Anthony was fighting Appellant's friend.

On cross examination, Gaylord Mercer testified that they were not flirting with the women and that Norman Mercer was not involved in a physical fight. He also testified that the bag was similar to a tote bag but conceded that he had said at the preliminary hearing that it was like a backpack. He further stated that he "might have told the wrong color bag or whatever, but I know what happened." *Id.*

Finally, the Commonwealth played video footage from Officer Bollinger's body camera.

Appellant then testified, stating that his wife had called him when she was at the deli to tell him that the Mercer Brothers and their friends were trying to hire them as prostitutes and had then started threatening them, so he drove to the deli. He further testified that he was nearby delivering food when this occurred, and that his 2-year-old nephew was in the car with him. Appellant testified that when he arrived at the deli, the confrontation had already begun, and he told the Mercer Brothers and their friends to "pull off." *Id.* at 61.

Appellant further testified that he returned to his car when the Mercer brothers and their friends returned to the U-Haul, drove his nephew to a relative's house, which was no more than a 5 or 10-minute drive away, then returned to the scene. Appellant further testified that, when he returned, he

- 4 -

consented to a search of his vehicle. Finally, he maintained that he never possessed a firearm or put his hands on Norman Mercer. On cross-examination, he testified that the Mercer brothers and their friends were not in the U-Haul when he spoke with them.

Appellant also played video captured by Officer Nuss's body camera, which showed the women telling police officers that the men had attempted to hire them as prostitutes. Exhibit D-3.

Finally, the parties stipulated that 1) the video footage from the officers' body cameras was authentic and admissible; 2) that when police arrived, Appellant "was not there. He came back to the scene; and police officers [conducted] a search of his person, a fanny pack that he had on him, and the vehicle that he returned in. And police officers did not discover a firearm in that search[,]" which was done with Appellant's consent; and 3) that Jamal Holland, Jr., if called as a character witness, would testify that Appellant had a reputation for being law-abiding, honest, and non-violent. N.T. Trial at 56, 58.

On October 31, 2022, the court found Appellant guilty of Terroristic Threats and PIC.[3] The court deferred sentencing until January 9, 2023.

Appellant filed a "Brief in Support of [Appellant's] Motion for Extraordinary Relief" on November 9, 2022, which indicated that he planned

---

[3] The court acquitted Appellant of Simple Assault. The Commonwealth had withdrawn prior to trial one count each of Carrying a Firearm Without a License and Carrying a Firearm in Public in Philadelphia.

to make an oral motion for extraordinary relief prior to sentencing. Brief in Support of Motion for Extraordinary Relief, 11/9/22, at ¶4. However, the record does not indicate that he made a corresponding oral motion. On January 9, 2023, the court sentenced Appellant to two years' probation on each count, to run concurrently.

**B.**

Appellant filed a timely Notice of Appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue for our review:

Did not the trial court err and abuse its discretion in denying Appellant's motion to set aside the verdict on all charges as against the weight of the evidence, where the testimony of the two Commonwealth witnesses, who are brothers, was inconsistent, contradictory, and totally unreliable?

Appellant's Br. at 4 (suggested answer omitted).

**C.**

Appellant challenges the weight of the evidence supporting his convictions. Before addressing this claim, we must determine whether he has preserved it for our review.

To preserve a challenge to the weight of the evidence, an appellant must first raise it before the trial court, either "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607 (A)(1)-(3). "[T]he purpose of this rule is to make it clear that a challenge to the weight of the evidence

must be raised with the trial judge or it will be waived." ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa. Super. 2004) (quoting Pa.R.Crim.P. 607 cmt.). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim[,]" even if the trial court responded to the claim in its Rule 1925(a) opinion. ***Commonwealth v. Weir***, 201 A.3d 163, 167 (Pa. Super. 2018); ***Commonwealth v. Burkett***, 830 A.2d 1034, 1037 n.3 (Pa Super. 2003).

Here, Appellant did not file a post-sentence motion or make an oral motion challenging the weight of the evidence. Therefore, we must determine if Appellant preserved this claim in his "Brief in Support of [Appellant's] Motion for Extraordinary Relief."

In this brief in support of his motion, Appellant stated that he "intends to" make an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(b) prior to sentencing, and he proffered the written brief in support of that motion. Brief in Support of Motion for Extraordinary Relief at ¶4. However, Appellant ultimately did not make an oral motion and the "plain terms" of Rule 704(b) do not permit a defendant to file a written motion for extraordinary relief prior to sentencing. ***Commonwealth v. Fisher***, 764 A.2d 82, 85 (Pa. Super. 2000).[4]

---

[4] ***Fisher*** cites the prior version of Rule 704, numbered as Pa.R.Crim.P. 1405. ***See*** Pa.R.Crim.P. 704, note.

Moreover, a motion for extraordinary relief "does not, of itself, preserve any issue raised in the motion, nor does the judge's denial of the motion preserve any issue." Pa.R.Crim.P. 704 cmt. Rule 704(b)'s purpose is "to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential." *Commonwealth v. Wilson*, 227 A.3d 928, 937 (Pa. Super. 2020) (citation omitted). However, it is well-settled that a motion for extraordinary relief is not a "'substitute vehicle' for raising a matter that should be raised in a post-sentence motion." *Commonwealth v. Askew*, 907 A.2d 624, 627 (Pa. Super. 2006) (citation omitted).

Here, Appellant neither filed a written post-sentence motion nor made an oral motion on the record prior to sentencing challenging the weight of the evidence, and his motion for extraordinary relief was insufficient to preserve this issue for appeal. Because Appellant failed to properly preserve his weight of the evidence claim as required by Rule 607, it is waived.

**D.**

In sum, we conclude that Appellant has waived his weight of the evidence claim. Therefore, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>5/01/2024</u>